## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | **Case No. 1:22-cr-00015-APM** |
| **v.** ) | |
| ) | |
| **KELLY MEGGS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MOTION TO CONTINUE TRIAL

Defendant Kelly Meggs, by and through the undersigned counsel, and pursuant to Local Rule 57.2 of the Local Rules of Criminal Procedure for the United States District Court of the District of Columbia hereby respectfully requests the Court continue the trial date set as to Mr. Meggs. Mr. Meggs has conferred with counsel for his co-defendants, some of whom have filed their own motions to continue the trial dates set in this matter, and all defendants have agreed to further toll time under the Speedy Trial Act to facilitate this continuance. To that end, and for the reasons discussed in the instant Motion, the ends of justice would be served by a continuance which substantially outweigh the interests of the public in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv). Indeed, because of the historic nature of this case, the public's interest in a speedy trial must not overshadow the interest of the parties and the Court in ensuring a speedy trial that affords the defendants all rights guaranteed under the Constitution.

Specifically, Mr. Meggs joins and adopts the Motions filed by Mr. Caldwell (July 14, 2022) (ECF No. 193) and Mr. Rhodes (July 16, 2022) (ECF No. 194) and considers those motions expressly incorporated herein. In addition, Mr. Meggs submits that a continuance is necessary because ████████████████████████████████████, the fact that the U.S. House Select Committee to Investigate the January 6th Attack on the Capitol

continues to disclose exculpatory information to which the government (let alone defense counsel) apparently has not yet been provided access, and for personal reasons intimated to the Court at the time defense counsel noticed their intent to appear as counsel on behalf of Mr. Meggs subject to a resolution of potential conflicts that were raised by the government.

I.    ██████████ █ ████████████

███████████████████████████████████

████████████████████████

████████████████████████████████████

██████████████████████████

████████████████████████████████████

███████████████████████████

████████████████████████████████

█████████████████████████

███████████████████████████████

██████████████████████

███████████████████████████

██████████████████████████████

████████████████████████

██████████████████████████████

██████████████████████████

_____

[1] ████████████████████████████████████████████
████████████████████████████████████████████
██





## II.    THE SELECT COMMITTEE CONTINUES TO REVEAL NEW INFORMATION

"We shouldn't be disqualifying people just because they believe the work of the committee or the functioning of government is important."

-    Assistant United States Attorney Molly Gaston in *Voire Dire*[3]

The government's position on the ability of the Court to conduct a fair trial is clear.  The repeated references to Mr. Meggs, his co-defendants, his Constitutionally protected affiliations, and the events of January 6, 2021, more generally, by the U.S. House Select Committee to Investigate the January 6th Attack on the Capitol have no bearing on this Court's sacred charge of ensuring a free and fair trial.  Yet, as Justice Jackson recognized:  "The naive assumption that prejudicial effects can be overcome by instructions to the jury, all practicing lawyers know to be unmitigated fiction."  *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring).  Indeed, nearly six (6) decades ago, the First Circuit admonished that the government – The United States – has a choice:

> We think that the United States is put to a choice in this matter: If the United States, through its legislative department, acting conscientiously pursuant to its conception of the public interest, chooses to hold a public hearing inevitably resulting in such damaging publicity prejudicial to a person awaiting trial on a pending indictment, then the United States must accept the consequence that the judicial department, charged with the duty of assuring the defendant a fair trial before an impartial jury, may find it necessary to postpone the trial until by lapse of time the danger of the prejudice may reasonably be thought to have been substantially removed.

*Delany v. United States*, 199 F.2d 107, 113-114 (1st Cir. 1952).  At its public hearing last week, July 12, 2022, the Select Committee specifically referenced Mr. Meggs by name on multiple occasions.  *Inter alia*, the Select Committee alleges that Mr. Meggs purportedly, "declared an

---

[3] Spencer S. Hsu and Devlin Barrett, Opening Statements Soon in Bannon Trial After Judge Rejects Delay, *The Washington Post* (July 19, 20220, *available at* https://www.washingtonpost.com/dc-md-va/2022/07/18/steve-bannon-trial-jury/

alliance among the Oath Keepers, the Proud Boys, and the Florida Three Percenters, *another militia group*."[4] (emphasis added).  Later, the Select Committee alleges that Mr. Meggs "spoke directly with Roger Stone about security on January 5th and 6th."  Here, not only is Congress *intending to influence the public* through its widely televised hearings, but Mr. Meggs and his co-defendants are prejudiced by the dissemination of information *not previously disclosed* through discovery.[5]

It's difficult not to quote the First Circuit's opinion in *Delaney* broadly, the words of the court then are presciently applicable now.  In short, *any trial* in the shadow of the intentionally influential widely televised hearings concerning the very facts to be determined by a jury is inherently prejudicial:

> This is not a case of pre-trial publicity of damaging material, tending to indicate the guilt of a defendant, dug up by the initiative and private enterprise of newspapers. Here the United States, through its legislative department, by means of an open committee hearing held shortly before the trial of a pending indictment, caused and stimulated this massive pre-trial publicity, on a nationwide scale. . . .  None of the testimony of witnesses heard at the committee hearing ran the gauntlet of defense cross-examination. Nor was the published evidence tempered, challenged, or minimized by evidence offered by the accused.
>
> If all this material had been fed to the press by the prosecuting officials of the Department of Justice, we think that an appellate court would have had to say that the denial of a longer continuance was an abuse of discretion. . . . .  Of course, it would have been a gross impropriety on the part of the prosecuting officials if they had made available to the press all this damaging material respecting [the defendant]; whereas it may be said that the prejudicial effect of the pre-trial publicity in this case was only a by-

---

[4] Here's Every Word From the Seventh Jan. 6 Committee Hearing on its Investigation, *National Public Radio* (July 12, 2022), *available at* https://www npr.org/2022/07/12/1111123258/jan-6-committee-hearing-transcript.

[5] *See* Sadie Gurman, Aruna Viswanatha, and Alexa Corse, Justice Department Steps Up Jan. 6 Probe of Those in Trump's Orbit, *The Wall Street Journal* (July 16, 2022), *available at* https://www.wsj.com/articles/justice-department-steps-up-jan-6-probe-of-those-in-trumps-orbit-11657974467.

product of the conscientious performance by the legislative committee of the investigative function constitutionally confided to the Congress. . . .

But the prejudicial effect upon [the defendant], in being brought to trial in the hostile atmosphere engendered by all this pre-trial publicity, would obviously be as great, whether such publicity were generated by the prosecuting officials or by a congressional committee hearing. In either case [the defendant] would be put under a heavy handicap in establishing his innocence at the impending trial. Hence, so far as our present problem is concerned, we perceive no difference between prejudicial publicity instigated by the United States through its executive arm and prejudicial publicity instigated by the United States through its legislative arm. The prosecution is by the "United States of America" . . . .

*Delany*, 199 F.2d at 113-114.  The investigation by the Select Committee is particularly prejudicial here, where the Select Committee continues to identify information material, and also exculpatory, to Mr. Meggs and his co-defendants seemingly not known, or certainly not produced, by the government.  For example, the July 12, 2022, Select Committee Hearing also featured the testimony of Jason Van Tatenhove, a purported former member of the Oath Keepers. The hearing, however, was the first time that Mr. Van Tatenhove's identity had been revealed to Mr. Meggs and/or defense counsel – either the government was not aware of his existence, or for whatever reason had not disclosed his identity or anything about him to Mr. Meggs and/or his counsel.[6]  Now, however, his belief that the Oath Keepers, "[are] a violent militia [and] the best illustration for what the Oath Keepers are happened January 6th when we saw that stacked military formation [including allegedly Mr. Meggs] going up the stairs of our Capitol,"[7] is in the public domain and the basis for this assertion has yet to be explored.

---

[6] Defense counsel is in possession of text messages exchanged between Mr. Rhodes and Mr. Van Tatenhove by virtue of the content of Mr. Rhodes's cell phone having been produced to defense counsel.

[7] *See infra* note 4.

Moreover, we now also know that a number of individuals relevant to the instant action have given transcribed interviews and/or depositions to the Select Committee, including Stewart Rhodes and the Oath Keepers' general counsel, Kellye SoRelle.  And the investigation of the Select Committee is ongoing.  On July 18, 2022, Select Committee Chairman Rep. Bennie Thompson (D-Miss), advised that a "scaled-back" preliminary report was likely to be issued in September, before the Select Committee issues its full report, which "might spill over past the midterms in November" because of a "deluge of new evidence" the Select Committee has received and expects to continue receiving "since kicking off its public hearings."[8]  On July 20, 2022, Select Committee Member Jamie Raskin (D-Md), was asked in an interview about the Oath Keepers:  "Explain to our audience the importance of the role of the Oath Keepers and the Proud Boys in what was billed to the public as a spontaneous protest."  In response, Rep. Raskin advised:  "[T]he suggestion had always been that this was a boisterous rally that got out of control, and it was all spontaneous and *ad hoc*.  And, you know, *all of our evidence* demonstrates that's completely false.  This was orchestrated.  It was deliberate.  It was planned."[9] (emphasis added).  And in the eighth public hearing held by the Select Committee last night – a hearing intended to influence public opinion about the events of January 6, 2021 – Select Committee Vice Chair Representative Liz Cheney (R-Wyo.) announced the Select Committee would hold additional hearings in September.  "In the course of these hearings we have received new evidence, and new witnesses have bravely stepped forward. . . .  Doors have opened, new

---

[8] Andrew Solender, Jan. 6 Panel Plans More Hearings and Multiple Reports, *Axios* (July 18, 2022), *available at* https://www.axios.com/2022/07/18/jan-6-panel-plans-more-hearings-reports.

[9] "Hit Against American Democracy":  Rep. Raskin on Purge of Secret Service Texts Jan. 6 Committee Sought, Democracy Now (July 20, 2022), *available at* https://www.democracynow.org/2022/7/20/jamie_raskin_january_6th_attack_capitol

subpoenas have been issued, and the dam has *begun* to break."[10] (emphasis added).  What that evidence is remains unknown to the government and to defense counsel, but we do know there are thousands of transcripts that will require review and consideration.

In short, *the United States* continues its investigation of the events of January 6, 2021, and *The United States* must accept the prejudices incumbent of the same.  To again quote the *Delaney* Court:

> Many grounds of reversal have been urged on this appeal. But perhaps the strongest point, the one placed first and foremost, and most seriously and earnestly relied upon by appellant, is that the trial judge committed error in not granting a continuance of the trial for a longer period, *until such time as it could be estimated with greater assurance that the prejudicial effect of the aforesaid publicity in the newspapers and magazines, over the radio and on television, had so far worn off that the trial could proceed free of the enveloping hostile atmosphere and public preconception of guilt . . . .*
>
> No doubt the district judge conscientiously did all he could, both in questions he addressed to the jurors at the time of their selection and in cautionary remarks in his charge to the jury, to minimize the effect of this damaging publicity, and to assure that defendant's guilt or innocence would be determined solely on the basis of the evidence produced at the trial.

*Delany*, 199 F.2d at 112 (emphasis added).

## III.    DEFENSE COUNSEL'S PERSONAL SCHEDULING CONFLICTS

When defense counsel first advised the Court of Mr. Meggs's desire to retain defense counsel, defense counsel requested "a status hearing so that defense counsel can also apprise the

---

[10] Mychael Schnell, Cheney Says Jan. 6 Panel Will Hold More Hearings in September, *The Hill* (July 21, 2022), *available at* https://thehill.com/homenews/house/3569809-cheney-says-jan-6-panel-will-hold-more-hearings-in-september/.  See *also* Luke Broadwater and Maggie Haberman, Jan. 6 Panel Presents Evidence of Trump's Refusal to Stop the Riot, *The New York Times* (July 21, 2022), *available at* https://www.nytimes.com/2022/07/21/us/politics/trump-jan-6.html ("The hearing hardly marked the end of the committee's work.  The panel now plans to enter a second investigative stage, prepare a preliminary report and hold additional hearings in September.  'The investigation is still ongoing, if not maybe accelerating,' said Representative Elaine Luria, Democrat of Virginia and a member of the committee.  *'We're gaining so much new information.'* (emphasis added)).

Court of several scheduling issues."  Motion (May 16, 2022) (ECF No. 139).  On May 17, 2022,

the Court held a Rule 12 Motion's Hearing at which time it acknowledged Mr. Meggs's Motion

and entertained a partial colloquy of defense counsel's schedule issues.  The next day, on May

18, 2022, the Court issued a Minute Order "conditionally grant[ing]" Mr. Meggs's Motion,

"pending any resolution and possible waiver of any conflicts issues."  On June 24, 2022, the

Court held a Status Conference at which time it conducted a colloquy with Conflicts Counsel and

Mr. Meggs concerning any potential "conflict issues" and ultimately, with the assent of the

government, concluded no such issues precluded defense counsel's representation of both Mr.

Meggs and his wife, Mrs. Connie Meggs.  Similarly, on July 8, 2022, the Court held a Status

Conference and confirmed no potential conflict precluded defense counsel's representation of

both Mrs. Meggs and her husband, Mr. Kelly Meggs.  And even now, defense counsel's

representation apparently remains conditional based upon the government's demand that the

Court inquire as to defense counsel's compliance with Rule 1.8(e) of the District of Columbia

Rules of Professional Conduct, *see* Mot. (June 22, 2022) (ECF No. 166); *United States v. Meggs*,

No. 21-cr- Mot. (June 22, 2022) (ECF No. 166), that the Court review defense counsel's

engagement agreements and, to defense counsel's knowledge, is awaiting the government's

proposed waiver and/or language confirming Mr. and Mrs. Meggs have no concerns regarding

their continued representation by defense counsel.

      Nevertheless, at each appearance before the Court, defense counsel – Mr. Woodward –

has advised the Court that he cannot represent Mr. Meggs at a trial beginning on September 26,

2022, because defense counsel is currently scheduled to begin a trial before Judge McFadden in

another case.  *See Minute Order* (Jan. 6, 2022), *United States v. McCaughey*, No. 21-cr-40.  In

addition, Mr. Woodward is anticipating the birth of his child on October 23, 2022, which in May

was not something that he had publicly disclosed to anyone.  In short, whether Mr. Woodward,

or some other attorney, were to represent Mr. Meggs, who through no fault of his own was

required to obtain new counsel, his counsel could not be available for a trial beginning

September 26, 2022.  To that end, although Mr. Woodward does acknowledge his familiarity

with the discovery in this case given his representation of Mrs. Meggs, the case as against Mr.

Meggs is very different.  Mrs. Meggs, for example, is not alleged to have been a participant in

*any* of the group chats that have been the focus of the government's allegations as against Mr.

Meggs and his co-defendants in *this* case.  Nor is Mrs. Meggs discussed in any of those chats or

other communications about the events leading up to January 6, 2021.  Finally, it bears noting

that in its Discovery Status Report of February 10, 2022, (ECF No. 44), the government advised

the Court that it would complete discovery in this case in short order.  To the contrary, since

February, the government has not filed a discovery status report and the population of its global

databases is ongoing. ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████

## CONCLUSION

In short, given the willingness of the defendants in this action to further toll time under

the Speedy Trial Act, the fact that discovery is ongoing, and for defense counsel's personal

scheduling conflicts, the Court should vacate the September 26, 2022, trial date and set a

scheduling hearing to discuss the next feasible date for a trial to be held in this matter.

Alternatively, the parties can set a new date at the August 2, 2022, Status hearing already

scheduled.

[SIGNATURE ON NEXT PAGE]

Dated: July 22, 2022      Respectfully submitted,

          */s/ Stanley E. Woodward, Jr.*
          Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
          BRAND WOODWARD, LP
          1808 Park Road, Northwest
          Washington, DC  20010
          202-996-7447 (telephone)
          202-996-0113 (facsimile)
          Stanley@BrandWoodwardLaw.com

          */s/ Juli Z. Haller*
          Juli Z. Haller, (DC 466921)
          The Law Offices of Julia Haller
          601 Pennsylvania Avenue, Northwest, Suite 900
          Washington, DC 20004
          Telephone: (202) 729-2201
          HallerJulia@outlook.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **Case No. 1:22-cr-00015-APM** |
| **v.** | ) | |
| | ) | |
| **KELLY MEGGS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

On July 22, 2022, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com
