**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**EDWARD VALLEJO,**<br>                      *Defendant*. | No. 22-cr-15 (APM) |

**REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY**

Defendant Edward Vallejo respectfully submits this reply in support of his motion to exclude the proposed expert testimony of Dr. Sam Jackson, Ph.D., and states as follows.

**ARGUMENT**

The government defends its proposed expert on "antigovernment extremism" and the Oath Keepers by pointing to cases involving experts on criminal gangs with specialized code words and insignia. Opp. 3–4. But unlike specialized code words and insignia, the Oath Keeper statements about which the government proposes to have Dr. Jackson opine do not involve hidden meanings beyond the ken of a lay jury. Indeed, they were all, to a letter, *public* statements presented to the world for public consumption. *See* S. Jackson, *The Oath Keepers: Patriotism, Dissent, and the Edge of Violence* (2018), available at https://surface.syr.edu/etd/896 ("Dissertation") at 77 ("The data used in this project is all publicly available: none of it requires an Oath Keepers membership or special permission to view…. [M]y data exclusively consist of material posted by the Oath Keepers or by Stewart Rhodes, the group's founder and president."); Gov't Expert Notice ("Dr. Jackson will base his opinions on his research into textual, audio, and video material posted by the Oath Keepers online…."). This is a crucial difference: the jury would not be helped by hearing an opinion from an expert on the meaning of ordinary English words written for public consumption by laymen.

The government also argues that certain aspects of "the Oath Keepers ideology"—such that the organization is "at its core an antigovernment organization"—is "counterintuitive." Opp. 4. But it is for the jury to decide whether the Oath Keepers are an "antigovernment organization" in any relevant sense; and since any opinion by Dr. Jackson on "the Oath Keepers ideology" would be based solely on reading Oath Keeper public statements without any "specialized" access, Dissertation at 77, his opinions would offer nothing the jury could not determine for itself upon reviewing any relevant statements.

Citing *United States v. Sandoval*, 6 F.4th 63, 87 (1st Cir. 2021), the government argues that courts permit experts to present opinions based on an "amalgamation" of testimonial statements, and that the Court should therefore permit Dr. Jackson's opinions from his study of Oath Keeper statements. Opp. 5–6. But *Sandoval* addresses an entirely different issue, namely, whether expert opinions based on an "amalgamation" of out-of-court testimonial statements violates the Confrontation Clause. 6 F.4th at 87. It says nothing about the threshold admissibility of an expert opinion under Rule 702, which requires that the opinion help the jury understand something beyond its ken. As for that question, while the "inner workings of a criminal organization," *Sandoval*, 6 F.4th at 87, can be esoteric, the "textual, audio, and video material posted by the Oath Keepers online," Dissertation at 77, are readily understandable by the jury.

Finally, the government argues that it would not be unfairly prejudicial to have an expert tell the jury that the Oath Keepers as an organization practice "antigovernment extremism" and operate at "the edge of violence," because references to the "tyrannical" nature of the federal government are "replete throughout the statements by Vallejo and other co-conspirators…that are likely to be introduced as evidence at trial." Opp. 5. At the outset, this argument proves Mr. Vallejo's main objection to Dr. Jackson's testimony: that it would simply tell the jury, using the cloak of an expert, how to interpret statements by Mr. Vallejo and other co-defendants introduced

at trial. If these statements indeed reflect anti-government extremism such that there would be no unfair prejudice, the jury would not be helped by having an expert pile on his interpretation of public Oath Keeper statements.

But in any event, the government misconstrues the statements it cites for support of its argument. Neither statement described Mr. Vallejo's personal intent or belief about "the need for the possibility of 'armed conflict' and 'guerilla war' against the government," Opp. at 5, as the government claims. In context, both described Mr. Vallejo's perception of the public mood and likely public reaction to the certification of the election. *See* ECF 102 at 11, 11 n.2 (explaining context of Mr. Vallejo's statements about the reaction of "the American people"). This is especially evident in statements by Mr. Vallejo the next day, after the certification, in which Mr. Vallejo describes the attackers of the Capitol as "domestic terroris[ts]" and expresses his intention to wait and see what happens on January 20th. *Id*. at 16. At the very least, the proper interpretation of Mr. Vallejo's and his co-defendants' statements is the province of the jury, and involves the interpretation of ordinary English words in the context of the specific events of the case. It would be unfairly prejudicial to allow the government to call an expert to offer his opinion about "Oath Keeper ideology" based on unrelated Oath Keeper statements, especially statements that individual defendants never heard.

## CONCLUSION

For the foregoing reasons, Defendant Vallejo respectfully requests that the Court exclude the proposed expert testimony of Dr. Jackson from his trial.

August 19, 2022                                         Respectfully submitted,

/s/ Matthew J. Peed
Matthew J. Peed (D.C. Bar No. 503328)
CLINTON & PEED
1775 I St. NW, Suite 1150
Washington, D.C. 20006
(202) 919-9491 (tel)
(202) 587-5610 (fax)

*Counsel for Defendant Edward Vallejo*

4