UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD VALLEJO,<br>      *Defendant*. | No. 22-cr-15 (APM) |

### MOTION TO EXCLUDE EXHIBITS

  Defendant Edward Vallejo respectfully moves to exclude the following exhibits in their current form.

**I. Agent Hilgeman Re-Direct Exhibit 9522**

  The government has provided notice that it seeks to introduce the following messages from Thomas Caldwell on re-direct of Agent Hilgeman:

- 11/14/2020 2:46:38 AM; From: Tom Caldwell To: Adrian Grimes:
  Thanks for coming by today. It meant a lot. Sure wish you were coming along tomorrow. If we cannot get the President another term, we are well and truly fucked. If we don't start mowing down masses of these shitballs they will come for all of us. Its kill or be killed I am afraid. I don't want to live in a communist country. I kinda hope there is some shit tomorrow in some ways just so we can get ON with it!

- 11/16/2020 4:17:47 PM; From: Tom Caldwell To: J. Godbold, D. Godbold:
  I was in and out of the middle of that throng and actually found Sharon at 3rd street and marched with her. Then I took snap of us and the video I shared with you before… At LEAST a million. We could have burned the congress to the ground if we had wanted to.

  Mr. Vallejo respectfully requests that these messages be excluded. The first message is a private message from Caldwell to Adrian Grimes early in the morning before the Million MAGA March. The message does not identify who the "masses" of "shitballs" are that Caldwell refers to, but its inflammatory language and hope for violence at the Million MAGA March are unduly

1

prejudicial when compared to the minimal probative value of Caldwell's personal opinions regarding this rally, which occurred two months before the certification proceeding. As the Court is aware, Caldwell hosted Oath Keepers on his property for this rally but was not a member of the Oath Keepers and was not on any operational Signal chats related to the Million MAGA March, the December 12th Jericho March, or the January 6th Oath Keepers operation. He is also someone who regularly used highly inflammatory rhetoric and described events he participated in inaccurately. While the balance under Rule 403 may have tilted in favor of admission in Caldwell's own case, it weighs in favor of exclusion here, where no defendant is alleged to have seen this message or communicated with Caldwell in any form whatsoever.

In addition to Rule 403 concerns, the second message is a backwards-looking description of Caldwell's actions and perceptions of a rally occurring two days prior. Since this private message was not sent in furtherance of any conspiracy, it is hearsay and does not meet any hearsay exception.

**II.     Exhibit 1500.2**

Government Exhibit 1500.2 is a timeline montage beginning at 12:36 p.m. and ending at 3:22 p.m. Mr. Vallejo respectfully objects to three aspects of the exhibit.

First, the exhibit fails to follow the Court's order that the timeline sequence show members of Line One leaving the Capitol prior to the entrance of Line Two. Like its predecessor, this new exhibit shows Line One entering the Capitol through the Columbus doors at 2:38–2:39 p.m. (the 11:16 to 13:00 mark of the exhibit). Later, the exhibit shows Line Two going up the stairs at 3:10 p.m. and entering the Capitol through the Columbus doors at 3:14 p.m. (the 16:22 to 17:30 mark of the exhibit). To avoid confusion, the Court previously ruled that the exhibit must show Line One leaving the Capitol before Line Two enters. However, Exhibit 1500.2 does not follow this order to show members of Line One leaving the Capitol building. Despite using Columbus door footage to show members of Line One entering, the exhibit does not use that same footage to identify members

of Line One as they leave. Instead, the exhibit merely includes a photograph of unidentified members of Line One near some columns of the Capitol (at the 18:36 mark) with the time label "~3:05–3:15 PM," followed by a faraway shot from the exterior of the Capitol labeled "3:16 PM" with a yellow circle around two unidentified members of Line One who appear to be descending the Capitol steps while carrying someone between them. From these timestamp labels, it is not clear that any members of Line One exited the Capitol prior to the entry of Group One at 3:14 p.m., much less that the individual defendants on trial—who are labeled upon their entry—did so nearly twenty-five minutes earlier. Accordingly, in line with the Court's previous ruling, Mr. Vallejo objects to Exhibit 1500.2 unless it contains exit footage from the Columbus door camera showing when individual Oath Keepers—especially the defendants on trial—exited the Capitol.

Second, at the 7:23 mark, the exhibit contains this snapshot of a 2:24 p.m. message sent by Mr. Vallejo followed by a 2:25 p.m. picture sent by Stewart Rhodes of his location:



This presentation of the Rhodes picture next to the Vallejo message creates the false impression that Rhodes was responding to Vallejo's offer of assistance by sending a photograph of his location.[1] In fact, Rhodes had been engaged in a different conversation stream starting at 2:06 p.m. in which he repeatedly discussed his whereabouts and posted multiple pictures of his surroundings. At 2:15 p.m., for example, Rhodes wrote, "I'm on the Supreme Court side of US Capitol. Whip or Landon, where are you?" He then sent a similar picture as the one used by the government in Exhibit 1500.2 almost ten minutes before Vallejo's message. At 2:26 p.m., Rhodes wrote again, "Come to South Side of Capitol," followed by three more pictures of his location. At 2:40 p.m., Rhodes again wrote, "South side of US Capitol," followed by a picture of his location. At 2:43 p.m., he again wrote, "Come to South side. Just left of dome," followed by three pictures of his location. He sent another two pictures of his location at 2:52 p.m. He sent two more from 2:53–2:56 p.m. with the words, "Back steps. On reflecting pool side. Opposite the SCOTUS." This pattern continued until 3:33 p.m., when Rhodes stated that "Whip, Todd, Landon, Joe, are now with me," and instructed "Anyone in DC who is not tasked with a security detail, come to US Capitol on the Supreme Court side." Given this continuous series of pictures of Rhodes's location beginning before Vallejo's message and continuing for more than an hour afterwards, it is extremely prejudicial to include the picture above as if it is a response to Vallejo's message. Accordingly, to the extent the government wishes to use Rhodes's messages and pictures to establish his location in its timeline, Mr. Vallejo requests that the government be required to use the 2:15 p.m. message stating, "I'm on the Supreme Court side of US Capitol"—which included a picture similar to the 2:25 p.m. message—rather than create the visual impression that Rhodes's 2:25 p.m. picture from an independent conversation stream was a response to Vallejo's 2:24 p.m. message.

---

[1] The government encouraged this false inference through its questioning in the first trial, asking, "Does Stewart Rhodes send a message to the same chat a minute after Ed Vallejo's message?"

Finally, Mr. Vallejo submits that it is highly misleading and prejudicial to introduce a timeline covering 12:36 p.m. to 3:22 p.m. labeled as "Jan 6 Coordinated Movements" and that purports to shows the dynamic movements of members of the "big board" using a color-coordinated scheme, all while omitting Mr. Vallejo's dynamic movements and messages during the same time period. Despite purporting to provide movements from 12:36 p.m. to 3:33 p.m., the only location information for Mr. Vallejo in this time frame is a static dot appearing at 2:24 p.m. and 2:38 p.m. labeled "Comfort Inn, Ballston, VA":




This creates the false impression that Mr. Vallejo was staged at the Comfort Inn during the 12:36 p.m. to 2:24 p.m. time period covered by the dynamic movement timeline. But as the government knows, Mr. Vallejo was wandering around the Metro Center area from 12:36 p.m. until 1:19 p.m. looking for his truck. Given the dynamic, colored movements used by the government to animate Exhibit 1500.2, the government should accurately show Mr. Vallejo's path during any time period it chooses to cover in a timeline of "coordinated movements." Likewise, since the government is including texts by Mr. Vallejo stating that he has "two trucks available," the government should for completeness include his 1:19 p.m. message, "Eureka! Truck found :)," to avoid any misleading impression that Mr. Vallejo had his truck available to act as a "QRF" in the initial 45 minutes included in its timeline.

5

### III.     Exhibits 1503.1, 1504, 1505, and 1508

Exhibit 1503.1 is a "Before Entry" Montage of footage of Line One members approaching and entering the Capitol, with highlighted circles, outlined individuals, and labeled individuals. Exhibit 1504 is a similar montage from inside the Rotunda. Exhibit 1505 is a montage showing Oath Keepers and others near the hallway to the Senate Chamber. And Exhibit 1508 is a montage of movements and actions of Line Two.

Many of the key underlying videos used in these montages, such as videos from defendants' phones, are extremely short (1-3 minutes). Mr. Vallejo objects to showing altered fragments of such short videos in a montage. While the government can create demonstratives to draw the jury's attention to aspects of videos it believes are important, any exhibits sent to the jury room should include the whole context of such short videos without darkening, highlighting, outlining, and other overlays that remove visual information and context.[2]

In particular, the government's use of fragments and highlighting have the practical effect of creating false or misleading evidence in Exhibit 1503.1. At minute 14:33, Exhibit 1503.1 pauses the underlying video and highlights the raised fist of Kelly Meggs before showing a snippet of the fist moving up and down. In the first trial, the government argued that Meggs was making a military movement with his fist to direct Line One into the open Columbus doors. On cross-examination,

---

[2] Mr. Vallejo reiterates his earlier objection to the overlay of out-of-court identification labels on videos without any eyewitness, or even agent witness, who can make in-court identifications of individuals. In some of these exhibits, whether an individual is one of the defendants on trial, or even an Oath Keeper, has relevance; and in many cases, identification labels are applied in these exhibits to scenes with nothing more visible than a fragment of a sleeve. Under Rule 602, the government should be required to have cooperating eyewitnesses make any identifications based on personal knowledge, since any agent identification is merely an opinion based on the same comparison of evidence a jury must undertake. And to the extent the Court permits agent identifications based solely on labels created or checked by the agent out of court—but which the agent cannot replicate unaided on the stand—the labels should be treated as recorded recollections under Rule 803(5), which permits the reading of such identifications but not the transmission of them in an exhibit to the jury.

the defense played the underlying video (Exhibit 1051), which showed numerous people pumping their fists in unison to pro-Trump chants. While the government may use demonstratives to argue for its interpretation of Meggs' fist movement in Exhibit 1051, it should not be allowed to create new evidence for the jury room that prejudicially slices videos with outlines and overlays. Mr. Vallejo respectfully objects to 1503.1 on this basis.

In addition, Exhibit 1503.1 includes a callout of statements and behavior by non-Oath Keepers that are independently objectionable. At the 16:07 mark of Exhibit 1503.1, the government chose to dramatically pause the video and highlight the statement, "Take his helmet off," followed by video of someone yanking on a policeman's helmet. No Oath Keeper took part in this incident or was even close enough to stop it, so there is little purpose in including this video segment and highlighting it with a dramatic pause other than to prejudicially stain the Oath Keepers with the violent actions of others. This segment should be excluded under Rule 403.

## CONCLUSION

For the foregoing reasons, Defendant Vallejo respectfully objects to Exhibits 9522, 1500.2, 1503.1, 1504, 1505, and 1508.


January 2, 2023                                     Respectfully submitted,

                                                    /s/ Matthew J. Peed   .
                                                    Matthew J. Peed (D.C. Bar No. 503328)
                                                    CLINTON & PEED
                                                    1775 I St. NW, Suite 1150
                                                    Washington, D.C. 20006
                                                    (202) 919-9491 (tel)
                                                    (202) 587-5610 (fax)

                                                    *Counsel for Defendant Edward Vallejo*