**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**EDWARD VALLEJO,**<br>                              ***Defendant.*** | **No. 22-cr-15 (APM)** |

**DEFENDANT EDWARD VALLEJO'S SUPPLEMENT IN AID OF SENTENCING**

At a hearing on May 31, 2023, the Court raised the question of whether the jury's verdict necessarily reflected its adoption of the government's theory regarding Mr. Vallejo's role or conduct within the conspiracy, and particularly whether he could be found to have joined a conspiracy to interrupt the certification without a finding that he specifically offered to bring weapons into the Capitol. Because of the importance of that question for Mr. Vallejo's sentencing, he respectfully submits the following additional record citations relevant to this question.

1.     In its opening and closing argument, the government argued that Vallejo's words prior to coming to Washington, D.C. showed that he had joined a general conspiracy to "stop the transfer of presidential power" as early as "on the way" to Washington, D.C. *See, e.g.*, Tr. 901:22–902:1 ("On his way across the country, Edward Vallejo messaged about their historic mission to fight what he called tyranny. Democrats he said were doomed. Vallejo was ready too. They were ready to use force to stop the transfer of presidential power."); Tr. 905:10–906:17 ("You will see that by early January 2021 these defendants and their co-conspirators came together and descended upon Washington, D.C. They joined together as part of the same conspiracy."); Tr. 4386:6–19 ("As November turned into December…Rhodes penned an open letter to the President….These

calls were Rhodes' invitation to sedition. Defendant Vallejo, Minuta, Moerschel, and Vallejo [sic], you know they *agreed* by their words and their actions.") (emphasis added); Tr. 4389:9–18 ("And Vallejo and his Arizona counterpart reached out to Rhodes about the plan. You know Vallejo *agreed* in part because he circulated that Hagmann Report, the same report that Meggs circulated.") (emphasis added); Tr. 4400:9–22 ("Remember what else Jessica Watkins said on that Zello recording….This is the same language, the same sentiment, that Hackett used with members of the Florida Oath Keepers in a chat that included Stewart Rhodes….This is the same language Vallejo circulated in The Hagmann Report. It's an *agreement* and force meeting."). If the jury credited this argument, no further findings were necessary. As the Court stated in its Rule 29 ruling, the jury could have determined that it was reasonably foreseeable that some members of a conspiracy to "stop the transfer of presidential power" would respond to the Capitol riot by entering to stop the certification, making any such conduct attributable to Vallejo.[1] Thus, under the government's argument and the Court's instructions, the jury's verdict may have been founded on Vallejo's general agreement with a conspiracy to stop the transfer of power alone, without taking any view of his meaning in the 2:24 and 2:38 p.m. texts or his intent regarding firearms.

2.      The government argued extensively that Mr. Vallejo's podcast comments likewise reflected his general intent to oppose the transfer of power by force and his joining of others in such a conspiracy. *See, e.g.*, Tr. 905:10–906:17 ("You will hear that Vallejo…echoed this *agreement* on a podcast.") (emphasis added); Tr. 914:15–20 ("You'll hear that members of this group started chanting, 'Push, push, get in there. They can't hold us.' They had to get to the Senate chamber. It was, as Vallejo had said earlier that day [on the podcast], guerilla war."). The jury

---

[1] Mr. Vallejo respectfully preserves his objection to this reasonable foreseeability analysis for purposes of appeal.

could have credited that argument and believed that Vallejo joined in a conspiracy "to stop the transfer of presidential power" on the morning of January 6 without separately determining that he had a specific role regarding weapons, especially given the extensive evidence that Vallejo planned to go into Washington, D.C. on January 6 to look for his lost truck and was not intending to be "staged" in Virginia. If the jury credited the government's interpretation of Vallejo's podcast comments, then under the Court's Rule 29 ruling, it could have determined that it was reasonably foreseeable to Vallejo that members of the conspiracy would have interrupted the certification as a manifestation of that conspiracy, regardless of whether it credited the government's specific argument regarding Vallejo's role and its interpretation of the 2:24 p.m. and 2:38 p.m. texts.

3.      Most importantly, the government argued that Vallejo's express offers on the afternoon of January 6 to "exfil" his coconspirators from the Capitol reflected a conspiratorial "agreement." TR. 4408–09. In its closing, it stated:

> [Vallejo wrote at] 4:49: "I have 2 pickups and 1 hour and 11 minutes to exfil, whomever needs it." He's outfitted and ready….The Capitol was finally secured between 4:30 and 5:00, according to the video. At that time now it was time to exfil. Vallejo needed to get his co-conspirators out to sprint them to safety, to aid them after they had breached. By the late afternoon, the guns wouldn't do the objective. Congress had been resecured. But earlier, there's no talk about exfil. It's only after the Capitol has been resecured. Throughout *all these messages*, what do you see? ***Agreement***.

*Id.* (emphasis added). As the government logically argued, if Vallejo knew his co-conspirators had broken the law by trying to stop the certification, his willingness to "aid" them in getting away from the scene of the crime could have been a basis to believe he had joined in the "agreement" and supported its ends, even if jurors were skeptical of the government's interpretation of the earlier texts from 2:24 p.m. and 2:38 p.m. This is especially significant since Vallejo's "exfil" texts *mirrored* the language about "trucks" from his 2:38 p.m. text, giving the jury an alternative basis

to convict even if it *credited* the defense argument that all of Vallejo's "QRF" texts reflected essentially the same "exfil" meaning.

4.      Finally, the government argued that Vallejo's enthusiastic messages on and after January 6 showed that he had joined in the agreement. *See, e.g.*, Tr. 4407:19–4408:1 ("Let's turn back to Vallejo now. When the Capitol fell, he celebrated in a message to back home in Arizona. 'The people have taken the Capitol, and Congress is in bedlam and locked down.'"); Tr. 4414:17–4415:14 ("[Vallejo says] 'We will be back at 6:00 a.m. to do it again.' 'We,' again, *agreement*. 'We'll be back at 6:00 a.m.'"). Thus, even if the jury believed that Vallejo was genuinely offering to help "exfil" people at 2:24 p.m. and 2:38 p.m., it could have credited the government's argument that he at some point joined in the agreement and intended to help co-conspirators continue to resist the transfer of power even if it meant regrouping and returning the next day.

## CONCLUSION

There were multiple bases from which the jury could conclude that Vallejo joined an agreement to oppose the transfer of presidential power that did not require it to credit—or even *consider*—the government's interpretation of Vallejo's 2:24 p.m. and 2:38 p.m. messages. Accordingly, Mr. Vallejo respectfully submits that the Court is not bound by the government's trial arguments regarding Mr. Vallejo's meaning and intent regarding these messages and firearms in general. Rather, the Court should be guided by the full record of evidence regarding any relevant question that is not inherent in the verdict. Such independent consideration of the full record, which Vallejo's sentencing memorandum (ECF 571-1) attempted to organize and compile, by no means involves relitigating Vallejo's guilt *vel non*. Rather, it is an appropriate part of considering the true "nature and *circumstances*" of the offense under 18 U.S.C. § 3553(a) within the bounds of the jury's verdict and the statutory sentencing range, as the Court is required to do.

May 31, 2023                              Respectfully submitted,


                                          /s/ Matthew J. Peed
                                          Matthew J. Peed (D.C. Bar No. 503328)
                                          CLINTON & PEED
                                          1775 I St. NW, Suite 1150
                                          Washington, D.C. 20006
                                          (202) 919-9491 (tel)
                                          (202) 587-5610 (fax)

                                          *Counsel for Defendant Edward Vallejo*