**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELMER STEWART RHODES III,<br>KELLY MEGGS,<br>KENNETH HARRELSON,<br>JESSICA WATKINS,<br>ROBERTO MINUTA,<br>JOSEPH HACKETT,<br>DAVID MOERSCHEL, and<br>EDWARD VALLEJO,<br><br>    Defendants. | Case No. 22-cr-15-APM |

**UNITED STATES REPLY TO DEFENDANTS RHODES' AND MEGGS'**
**JOINT OPPOSITION TO GOVERNMENT'S RESTITUTION MEMORANDUM**

For their criminal conduct on January 6, 2021, Defendants Elmer Stewart Rhodes III and Kelly Meggs are responsible to pay restitution to the victims of their offenses. The only real question is how much: are they liable for the same $2,000 as every other felony defendant, or does their greater culpability merit greater restitution liability? The answer is clear. As seditious conspirators who organized and led their cohorts on January 6, they are more culpable than many other January 6 defendants. And so they should be held responsible for more restitution than those who did not meticulously plan their involvement in the riot and take on leadership roles.[1]

The parties agree on some of the key concepts. First, Defendants' offense conduct must be the actual and proximate cause of the victims' losses. *Paroline v. United States*, 572 U.S. 434, 444-56 (2014). Second, Defendants' share of the total restitution ordered should be tied to their relative

---

[1] Defendant Joseph Hackett also joined Defendants Rhodes' and Meggs' joint opposition. ECF 686. The government submits that he is liable for restitution for the same legal and factual reasons detailed in this reply brief.

role causing the total loss from the riot. *Id*. at 457-63. Of course, the parties disagree on how these concepts apply to their case. But one thing is clear: uncertainties in calculating restitution liability should be resolved in favor of making victims whole. *See e.g., United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010) (under the MVRA and VWPA, the district court may resolve uncertainties in calculating restitution "with a view toward achieving fairness to the victim") (cited cases and legislative history omitted); *United States v. Gonzalez-Calderon*, 920 F.3d 83, 85 (1st Cir. 2019) (same).

A.      **Defendants actually caused victims' harm under an aggregate causation standard.**

Defendants raise two primary objections to the government's restitution proposal in their Joint Opposition, ECF 680. First, they claim the government failed to prove they "*actually* caused" "any harm." *Id*. at 5 (emphasis added); *see also id*. at 6 (government failed to show that Defendants' "*actions* caused the damage") (emphasis added); 7 ("the government has not proved any property damage caused by [Defendants] or their codefendants"). They thereby advance the notion that, unless a defendant convicted of conspiracy directly caused loss with his own hands, he is immune from restitution liability. That is not the law. Restitution liability for conspirators turns on the fact and scope of their participation, not the nature of their overt acts. Otherwise, in a conspiracy to commit murder, the mastermind would owe no restitution and only the hired hit man would be liable. That Defendants did not personally damage the Capitol building or its contents or personally assault any police officers cannot shield them from liability. That is because they plotted for weeks to organize numerous minions to be prepared to use any means necessary, up to and including force, to stop the transfer of presidential power. On January 6, they did just that by physically attacking the Capitol in a manner that made damage to property and injury to police entirely foreseeable.

2

As shown in the government's opening submission (ECF 654 at 9-14) in cases with numerous offenders, whether acting in concert or not, aggregate but-for causation rather than individual but-for causation satisfies the actual causation requirement. *See Paroline*, 572 U.S. at 450-52. So although actual causation is required, where, as here, the combined acts of many wrongdoers indisputably caused the victims' losses, the government need only show that the defendant's offense conduct caused some of that harm. *See id.* at 452 ("It would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm."). Under this aggregate causation theory, Defendants' and their co-conspirators' participation in the January 6 riot *did* actually cause a portion of the victims' harm: Putting aside for the moment their leadership roles in criminal conspiracies, they supported and were part of a mob that stormed the Capitol, overwhelming the police lines and thinning their ranks as they tried to fend off the violent rioters. *See* ECF 565 (Government's Opening Sentencing Memorandum).

Defendants rely heavily on Justice Roberts' dissent in *Paroline* that criticized the aggregate causation theory. ECF 680 at 5-6. But the *Paroline majority* explicitly adopted and applied that theory, holding temporally and physically remote defendants liable for a portion of the victim's damages. Here, Defendants committed offenses together with thousands of other wrongdoers, all of whom contributed to the harm the riotous mob inflicted on police officers and Capitol property. Their *de facto* joint undertaking and the aggregate effect of many wrongdoers' offenses along with their own, suffices to require them to compensate the victims for their relative share in the harm.

**B.    Defendants proximately caused victims' harm.**

Proximate cause is "a flexible concept" that "refers to the basic requirement that there must be some direct relation between the injury asserted and the injurious conduct alleged." *Paroline*,

3

572 U.S. at 444 (cleaned up). It narrows the scope of actual causation, precluding liability "where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id*. at 445.

The harm Defendants' offenses caused victims was no "mere fortuity." Amid the violent Capitol attack, Defendants reasonably foresaw the likelihood of damage to the Capitol building and injuries to the police officers who were guarding it that day. The damages were not remote or tenuous but rather a direct result of Defendants' own offense conduct of marshalling their fellow Oath Keepers and associates to physically storm the Capitol and push through the undermanned police officers. Defendants' extensive planning, their knowledge that they had successfully summoned dozens of their followers to the Capitol on January 6, and their directives to storm the Capitol, made the ensuing property damage and physical injuries to the police not merely foreseeable, but inevitable. That readily satisfied the "proximity requirement" for restitution liability.

C.   **As conspirators and leaders, Defendants are more culpable than non-conspirators and non-leaders, and so they are responsible for a larger restitution share.**

Second, Defendants argue that, even if they are liable for restitution, their liability should be no greater than that imposed on hundreds of other January 6 defendants convicted of felonies because "the record suffers from a severe dearth of any evidence to establish any leadership activity taken by" Defendants. ECF 680 at 7-9. Apart from the plethora of facts detailed in both the government's sentencing memoranda (ECF 565) and the government's opening restitution memo (ECF 654) illustrating Defendants' leadership roles leading up to and on January 6, the *Court* has already found precisely that Rhodes and Meggs were subject to four-level enhancements as leaders and organizers of the various conspiracies of which they were convicted. *See* 5/25/23AM

4

Tr. at 77 (Rhodes) and 5/25/23PM Tr. at 27 (Meggs). Defendants do not take issue with the legal proposition that the leaders of a conspiracy should pay more in restitution than their underlings.

Because many rioters converged to cause the victims' injuries, all convicted January 6 defendants are liable for restitution amounts that reflect their relative role in causing the victims' losses. But some defendants, including Rhodes and Meggs, are responsible for incrementally more harm than others. Defendants organized and directed multiple co-conspirators on January 6, ordering or leading them into the Capitol and adding to the size and damage of the riot with not just themselves but others they controlled. To ignore their organizational and leadership roles undermines the apportionment structure and discounts their relative culpability. *See Paroline*, 572 U.S. at 456 (recognizing that, although the primary goal of restitution is compensatory, "it also serves punitive purposes"); *United States v. Monzel*, 930 F.3d 470, 478-79 (D.C. Cir. 2019) ("the perpetrator's relative share "should not be severe," but neither should it be "token or nominal." Instead, it should be "reasonable and circumscribed.") (cleaned up); S. Rep. No. 104-179, at 12, reprinted in 1996 U.S.C.C.A.N. 924, at 925 (Congress enacted the MVRA to "ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society.").

The defendants complain that they should not be held responsible for the "entirety of the events of that day" (ECF 680 at 2). But the government is not suggesting they pay the approximately $2.9 million in damages owed to the victims. In fact, the government took the *opposite* position in *Paroline*, arguing against the victim's attempt to hold Paroline—who possessed only a few out of thousands of her images—liable for the entirety of her damages, *Paroline v. United States,* 2013 WL 6699432 at 9-18 (2013) (Reply Brief for the United States on Writ of Certiorari). So too here. And that position is in line with the *Paroline* court, which also

5

rejected the entirety approach, opting instead for liability based on relative culpability. *Paroline*, 572 U.S. at 453-57.

**D.     The federal restitution statutes are not unconstitutional under the Sixth Amendment.**

Defendants argue that a district court violates the Sixth Amendment by ordering any restitution at all. ECF 680 at 10-11 (citing *Hester v. United States*, 139 S. Ct. 509, 510 (2019) (Gorsuch, J., dissenting from denial of *certiorari*) ("the statutory maximum for restitution is usually zero, because a court can't award any restitution without finding additional facts about the victim's loss"). But no court has held that restitution is unconstitutional. Courts of appeals that have considered whether the Sixth Amendment requires that juries make restitution findings have held otherwise. *See, e.g.*, *United States v. Bonner*, 522 F.3d 804, 806-07 (7th Cir. 2008) (rejecting claim that *Apprendi*, *Blakely*, or *Booker* apply to restitution); *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012) (holding that whereas *Apprendi* applies to criminal fines, the "uniform rule adopted in the federal courts" is that *Apprendi* does not apply to restitution "because restitution lacks a statutory maximum"). This Court should decline Defendants' invitation to be the first court to invalidate every federal restitution statute.

**E.     Defendants are liable for mandatory restitution under the MVRA regardless of their financial circumstances.**

Defendants argue they are financially unable to pay restitution and therefore the Court should either consider their financial circumstances to deny or reduce restitution, as permitted under the VWPA,[2] or at least order a nominal payment schedule if restitution is mandatory under

---

[2] The VWPA directs the court to consider the defendant's financial circumstances in determining a restitution award. 18 U.S.C. § 3663(a)(1)(B)(i) ("The court, in determining whether to order restitution under this section, shall consider—(I) the amount of the loss sustained by each victim as a result of the offense; and (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.").

the MVRA. (D.E. 680 at 11-12) *See* 18 U.S.C. § 3664(f)(3).[3] Because restitution is mandatory under the MVRA, at most Defendants' financial circumstances are relevant to a payment schedule under § 3664(f)(3).

> **1. The MVRA mandates restitution where, looking at the facts and circumstances of the offense, the defendant has committed the offense in a way that constitutes an "offense against property."**

The MVRA mandates restitution for a subset of offenses covered in the VWPA, including "offense[s] against property" and "crime[s] of violence":

> (c)(1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense--
>   (A) that is--
>     (i) a crime of violence, as defined in section 16;
>     (ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; [and]
> \*   \*   \*
> (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(c)(1).

The MVRA does not define "offense against property," but Circuit courts invariably have held that "courts may consider the facts and circumstances of the crime that was committed to determine if it is an 'offense against property' within the meaning of the MVRA." *United States*

---

[3] 18 U.S.C. § 3664(f)(3)(A), (B) allows a court to: "(A) direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments"; or "(B) direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."

7

*v. Razzouk*, 984 F.3d 181, 186 (2d Cir. 2020). Although the D.C. Circuit has not yet weighed in, so far, every Circuit to have considered the issue has rejected a categorical approach.[4]

This means that an "offense against property" is not categorically limited to those crimes that have an *element* that "implicates" property. *Id.*; *see id.* at 188 ("We see no reason to limit arbitrarily victims' compensation for property loss to those crimes—Hobbs Act robbery, for example—in which some action involving 'property' is ordinarily referred to as an element"). Rather, courts apply a "circumstance-specific" approach, looking at "the specific way in which an offender committed the crime on a specific occasion." *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009) (contrasting categorial and circumstance specific approaches in the context of an immigration case).

This fact-based approach is consistent with the "plain text of the statute . . . [which] suggests that the way the crime is carried out is relevant to its application." *Razzouk*, 984 F.3d at 187. "[T]he MVRA's description of 'offenses against property' makes no mention of the elements of any generic crime and provides no other signal that examination of such elements serves its purpose." *Id.* This reading is also supported by use of the word, "committed" in the phrase "committed by fraud or deceit," which points to how the crime was carried out, rather than how it is defined. *Id.* By contrast, a "crime of violence," to which MVRA also applies,

---

[4] Rejecting a categorical approach and instead looking at how the crime was committed, courts have held that the following crimes were "offense[s] against property": *Razzouk*, 984 F.3d at 186 (accepting bribes in violation of 18 U.S.C. § 666(a)(1)(B)); *United States v. Ritchie*, 858 F.3d 201, 211 (4th Cir. 2017) (making a false statement in a mortgage fraud case, in violation of 18 U.S.C. § 1001(a)(2)); *United States v. Hagen*, 60 F.4th 932, 953 (5th Cir. 2023) (conspiracy to defraud the United States and to commit money laundering in a health care fraud case, in violation of 18 U.S.C. §§ 371, 1956(a)(2)(A), (h)); *United States v. Collins*, 854 F.3d 1324, 1334 (11th Cir. 2017) (conspiracy to accept gratuities in connection with a bank transaction, in violation of 18 U.S.C. §§ 215, 371). *See also United States v. Sukhtipyaroge*, 394 F. Supp. 3d 951, 95-60 (D. Minn. 2019), *aff'd on other grounds*, 1 F.4th 603 (8th Cir. 2021) (visa fraud, in violation of 18 U.S.C. §§ 1546, was an "offense against property" because it caused the immigrant victim to lose entitled earnings).

§ 3663A(c)(1)(A)(i), is governed by 18 U.S.C. § 16's definition of "crime of violence" that turns upon the elements of the offense. *Id*.

The non-categorical approach also is consistent with the MVRA's "broad remedial purposes. The statute is designed to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *Razzouk*, 984 F.3d at 188 (cleaned up); *Ritchie*, 858 F.3d at 210 ("Congress could not have intended to exclude from the broad, mandatory reach of the MVRA those unfortunate victims who suffer property loss as a result of an offense that doesn't contain as an element a reference to 'property.'"); *see generally United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) ("The purpose of the MVRA is essentially compensatory: to restore a victim, to the extent money can do so, to the position the victim occupied before sustaining injury.") (cleaned up).

Because the analysis turns on the *way* an offense was committed, offenses charged under a particular statute may be "offenses against property" in some circumstances but not in others. But if an offense is committed in a manner that "implicate[s] a crime against property, the MVRA requires the court to enter a related order of restitution." *Razzouk*, 984 F.3d at 186.

**2.  Under a fact-specific analysis, offenses against property encompass a wide array of crimes requiring mandatory restitution.**

While courts agree that defining an "offense against property" should be based on a factual approach focused on the conduct underlying the offense of conviction instead of the elements of the offense, they nevertheless differ somewhat in what *against* property means. But as discussed below, the way Defendants committed their offenses qualifies as "offense[s] against property" under any interpretation.

Certainly an offense qualifies as being "against" property where a defendant's *objective* is to damage property. *See e.g.*, *United States v. Quarrell*, 310 F.3d 664, 678 (10th Cir. 2002)

9

(conspiracy to violate the Archaeological Resources Protection Act, in violation of 18 U.S.C. § 371, was an "offense against property" because the unlawful objective of the conspiracy was to "illegally excavate public land," in furtherance of which the defendants "knowingly and voluntarily ... damaged the land"). Mandatory restitution also may be appropriate where an offense *results in* physical harm to property. *See, e.g.*, *United States v. Sawyer*, 825 F.3d 287, 292 (6th Cir. 2016) (holding that the defendant's conviction for conspiracy to violate the Clean Air Act—a scheme involving the improper demolition of buildings with asbestos-containing material—was an "offense against property" because it "resulted in the asbestos contamination of nearly 300 acres of land").

But an "offense against property" does not *require* physical damage to property. Rather, "against property" can include offenses committed in a way that *infringes on a victim's property interest* or where the defendant *derives an unlawful benefit* from a victim's property. *See e.g.*, *United States v. Luis*, 765 F.3d 1061, 1066 (9th Cir. 2014) (mortgage fraud conspiracy, in violation of 18 U.S.C. §§ 1956(h) and 1957, infringed on banks' property interests where scheme caused bank to issue fraudulently obtained loans on real property purchased using illicit drug trafficking funds); *Razzouk*, 984 F.3d at 188-89 (public utility employee deprived utility—an organization receiving federal funds—of a property interest in money by accepting bribes and causing utility to make payments for phantom work to a contractor, in violation of 18 U.S.C. § 666(a)(1)(B)); *United States v. Bengis*, 631 F.3d 33, 34-42 (2d Cir. 2011) (conspiracy and substantive violations of the Lacey Act, in violation of 18 U.S.C. § 371 and 16 U.S.C. § 3372(a)(2)(A), involving concealing the origins of lobsters illegally harvested from South Africa's territorial waters when importing them into the United States, deprived South Africa of property interest in revenue); *United States v. Turner*, 718 F.3d 226, 236 (3d Cir. 2013) (conspiracy to defraud the IRS of taxes owed, in

violation of 18 U.S.C. § 371, deprived the IRS of its property); *United States v. Stephens*, 374 F.3d 867, 871 (9th Cir. 2004) (failure to pay child support deprived victim of the property right to receive child support payments); *United States v. Hagen*, 60 F.4th 932, 955 (5th Cir. 2023) (health care fraud conspiracy derived an unlawful benefit from the Medicare program). *See also United States v. Boutros*, No. 20-CR-0082 (APM), 2020 WL 6683064, at *1 (D.D.C. 2020) (Mehta, J.) (bank fraud is "an offense against property"). Additionally, courts broadly define the term "property" to provide restitution for both tangible and intangible property rights. *See e.g., United States v. Shengyang Zhou*, 717 F.3d 1139, 1155 (10th Cir. 2013) (holding that restitution "includes damage to intangible property" such as trademarks and goodwill).

The Eleventh Circuit has articulated a somewhat narrower view, holding that property "must serve as the object of the offense, not simply a collateral component." *United States v. Collins*, 854 F.3d 1324, 1331 (11th Cir. 2017). So "criminal conduct does not necessarily qualify as an 'offense against property' *solely* because it results in property damage or because someone suffers a loss at some point during its execution." *Id.* at 1331-32 (emphasis added). Accordingly, the Eleventh Circuit "exclude[s] offenses with only incidental property loss." *Id.* at 1332. But the Eleventh Circuit's definition includes offenses where the defendant *intends* to damage another's property as well as offenses where the defendant "*seeks to derive an unlawful benefit* from another's property or *otherwise deprive* a person of his property, therefore acting in opposition to or contrary to the classic property rights of ownership and possession" *Id.* at 1331 (internal quotation marks omitted) (emphasis added).

Applying this definition to the facts, the *Collins* court held that, although not all gratuities offenses qualify as "offense[s] against property," the defendant bank employee who conspired to accept illegal gratuities for assisting a third party in cashing stolen United States Treasury checks,

11

in violation of 18 U.S.C. §§ 215 and 371, committed an offense against property because she "sought to derive an unlawful benefit" from funds (property) belonging to the bank in the transactions she corruptly facilitated. *Id*. at 1335. So despite language narrowing the definition of "offense against property," the *Collins* holding falls squarely within other Circuits' case law cited above.

### 3. Defendants and their co-conspirators committed offenses in a manner that qualifies as offenses against property.

Using force to physically storm the Capitol to prevent the peaceful transfer of presidential power necessarily entailed interfering with the Architect of the Capitol's possessory interest, making restitution to the victims mandatory under the MVRA.

The jury convicted Defendants of seditious conspiracy, in violation of 18 U.S.C. § 2384 (Count 1); conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) (Count 2: Meggs); obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 3); conspiracy to prevent members of Congress from discharging official duties, in violation of 18 U.S.C. § 372 (Count 4: Meggs); and tampering with documents or proceedings, in violation of 18 U.S.C. §§ 1512(c)(1) and 2 (Counts 7-8).

And, as conspirators, Defendants are liable for damages caused by the criminal scheme regardless of whether they committed each underlying act giving rise to damages from those offenses. Defendants' co-conspirators, for example, were convicted of some of these same offenses as well as obstructing an officer during a civil disorder, in violation of 18 U.S.C. §§ 231(a)(3)(2) and 2 (Count 6: Watkins). While Meggs and other were acquitted of destruction of property, in violation of 18 U.S.C. §§ 1361 and 2 (Count 5: Meggs, Harrelson, Watkins), the Court rightly noted at sentencing that at least Meggs "is responsible for the destruction of property to the east— to the Columbus Doors as to which the jury made guilty determinations in the third trial as to other

co-conspirators. And so there's at least a preponderance of the evidence to establish liability on an aiding-and-abetting basis for the destruction of property as well." 5/25/23PM Tr. at 24-25. In cases involving a scheme or conspiracy, a defendant who is acquitted of a particular count may still be liable for losses caused by others' conduct. Although the D.C Circuit has only considered the question—whether restitution is appropriate for acquitted conduct that falls within the scope of other scheme-based offenses of conviction—under a plain error standard of review, *United States v. Clark*, 747 F.3d 890, 897 (D.C. Cir. 2014), other courts permit the practice. *See e.g.*, *United States v. Jones*, 511 F. App'x 420, 424 (6th Cir. 2013).

Under both the MVRA and the VWPA, courts may award restitution to victims for a defendant's actions pursuant to a conspiracy or scheme for which he has been convicted "'regardless of whether the defendant is convicted for each criminal act within the scheme,' so long as the loss is a direct result of the defendant's criminal conduct or 'is closely related to the scheme.'" *United States v. Emor*, 850 F. Supp. 2d 176, 202 (D.D.C. 2012) (citing *United States v. Karam*, 201 F.3d 320, 325-26 (4th Cir. 2000)). *See* 18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2). The conduct underlying Defendants' criminal scheme establishes that they committed offenses against property, and so restitution is mandatory under the MVRA.

As discussed, an "offense against property" "includes situations where the defendant seeks to . . . deprive a person of his property, therefore acting 'in opposition to' or 'contrary to' the classic property rights of ownership *and possession*." *United States v. Collins*, 854 F.3d 1324, 1331 (11th Cir. 2017) (emphasis added). The right to possession—either by an owner, lessor, or in this case, the Architect of the Capitol, the federal agency ultimately responsible for the care of

the Capitol Building and Grounds and from whose budget the repairs to the Capitol for damage the January 6 riot caused were paid—is a paramount property interest.[5]

Defendants planned to, and did, use force to stop the Electoral Certification vote. Intending to take matters into their own hands after political figures and court hearings across the country failed them, they prepared for, encouraged, and joined the mob that violently stormed the Capitol building, breaking through physical barriers, rushing past drastically outnumbered police officers guarding the building, breaking into the building, and flooding the public areas of the building for hours. Their actions directly caused a substantial disruption, for more than six hours, of the Architect of the Capitol's possessory interest in the Capitol Building. That, in turn, caused a total and protracted deprivation of the Architect's use of the Capitol for one of its Constitutionally and statutorily commanded purposes: serving as the location of the Electoral College certification vote by a Joint Session of Congress. And circumstances of these offenses contributed to the Capitol Police officers' inability to control the hundreds of rioters who entered the building on January 6.

---

[5] The Architect of the Capitol is one "victim" to whom restitution is owed *See* 18 U.S.C. § 3663A(a)(2) ("'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"). Another victim of Defendants' crimes is the United States Capitol Police (USCP), many of whose officers, numbering several hundred, were guarding the Capitol Building and Grounds on January 6 when they suffered physical and/or emotional injuries as a direct result of the riot in which the defendant participated. *See* 18 U.S.C. § 3663A(b)(2) (mandating restitution "in the case of an offense resulting in bodily injury to a victim" for costs including "necessary medical and related professional services and devices related to physical, psychiatric, and psychological care"; "physical and occupational therapy"; and "lost income"). Payments made by the USCP to cover the costs of its officers' losses are compensable under the MVRA. *See* 18 U.S.C.A. § 3664 (j)(1) ("If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation."). *See generally United States v. Douglas*, 525 F.3d 225, 254 (2d Cir. 2008) (MVRA authorized restitution order requiring murder defendant to reimburse victim's employer for payment it made for victim's headstone).

The entire point of the riot, and the entire point of Defendants' actions and offenses, was to occupy the Capitol in part to use force to prevent the lawful transfer of presidential power. The resulting damage was not "incidental" to the offense but fully within the scope of the offenses they committed. They therefore are liable for mandatory restitution under the MVRA.

**F.      Conclusion**

For the foregoing reasons, the Government respectfully submits that this Court impose restitution against the defendants as follows: Stewart Rhodes: $42,000; and Kelly Meggs: $28,000.

                              Respectfully submitted,
                              MATTHEW M. GRAVES
                              United States Attorney
                              D.C. Bar No. 481052

By:              /s/
                              Troy A. Edwards, Jr.
                              Assistant United States Attorney
                              NY Bar No. 5453741
                              Alexandra Hughes
                              Jeffrey S. Nestler
                              Kathryn L. Rakoczy
                              Assistant United States Attorneys
                              Louis Manzo
                              Trial Attorney, U.S. Department of Justice