IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )        CR No. 22-15-11
                                    )        Washington, D.C.
        vs.                         )        May 31, 2023
                                    )        3:48 p.m.
EDWARD VALLEJO,                     )
                                    )
            Defendant.              )
_____)

TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          Troy Edwards
                             Alexandra Hughes
                             Louis Manzo
                             U.S. ATTORNEY'S OFFICE
                             601 D Street, NW
                             Washington, D.C. 20579
                             (202) 252-7277
                             Email:
                             troy.edwards@usdoj.gov

```
APPEARANCES CONTINUED:

For the Defendant:              Matthew J. Peed
                                CLINTON & PEED
                                1775 Eye Street, NW
                                Suite 1150
                                Washington, D.C. 20006
                                (202) 919-9491
                                Email: matt@clintonpeed.com

Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                E. Barrett Prettyman CH
                                333 Constitution Avenue, NW
                                Washington, D.C. 20001
                                (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

P R O C E E D I N G S

COURTROOM DEPUTY:  Good afternoon, Your Honor. This is Criminal Case No. 22-15-11, United States of America versus Edward Vallejo.

Troy Edwards, Alexandra Hughes, and Louis Manzo for the government.

Matthew Peed on behalf of the defense.

The defendant is appearing via videoconference for these proceedings.

THE COURT:  All right.  Good afternoon, everybody.

Mr. Vallejo, good afternoon to you, sir.

I hope everybody is well.

Thanks for making yourselves available on such short notice.

I wanted to get together with everybody to address this issue of the request that Mr. Vallejo's made to have a witness testify, this is Mr. Carter, at the hearing tomorrow, either remotely or in person.

You know, the proffer was that Mr. Carter would have provided some testimony about Mr. Vallejo's actions on January 6th and his observation of him.

I then raised the question about the appropriateness of having such a person testify, given that it appeared designed to cast doubt on the jury's verdict, and the reasonable inferences that a jury could have drawn

```
1   from the trial evidence, and the government, along with
2   Mr. Peed, provided some responses via email which we'll post
3   to the docket.
4           But, you know, in essence, Mr. Peed is asking
5   essentially -- to essentially fill in the factual record.
6   And the government is of the view that it's not -- the Court
7   has the discretion to decline to hear from Mr. Carter, given
8   the jury's verdict, and also it's essentially not --
9   his testimony is essentially not germane to the ultimate
10  question at sentencing, which is what the appropriate
11  sentence should be.
12          So, Mr. Peed, I don't know if you've had a chance
13  to look at the government's response and its cases that it
14  cited.  And if you had any response and any thoughts, I'm
15  happy to hear from you about that.
16          MR. PEED:  Sure, Your Honor.
17          I mean, at the outset, as I said in my email, this
18  is not at all trying to relitigate guilt or innocence.  The
19  jury has ruled, and they found that Mr. Vallejo conspired to
20  hinder or delay the execution of a law and interrupt
21  Congress, et cetera.
22          Within those parameters, the Court must determine
23  relevant offense conduct, and there are pretty significant
24  differences between the government and Mr. Vallejo about
25  what the evidence actually shows.
```

1          And so that's why I sort of thought, I guess

2     assumed, the Court would want some information about that

3     kind of core -- you know, things that typically go core into

4     sentencing are things like, did the defendant use a firearm,

5     or intend the firearm, did the defendant cause bodily

6     injury, those types of questions that go to mitigation or

7     enhancement typically the Court must determine in addition

8     to whatever the jury found, unless it's an element that on

9     *Apprendi* the jury ruled on, which it wasn't here.

10          So there was no *Apprendi*-like firearms finding by

11    the jury.  The government, in all its papers, in all its

12    argument, has said Mr. Vallejo was the firearms guy who was

13    going to bring them.  I think that would matter for

14    sentencing what the Court's view of that was, and so that's

15    why I wanted to --

16          THE COURT:  Well, I guess what --

17          Well, I mean, all of what you say is true.

18    And I guess that's what prompted my response to your

19    inquiry, was, you're right, the government has taken the

20    view and did argue to the jury that Mr. Vallejo was a

21    QRF leader and that he had prepared himself and was prepared

22    to bring weapons into the city if called upon to do so.  And

23    it seems to me that that's what you're trying to relitigate

24    with Mr. Carter's testimony.

25          And it seems to me that that would have certainly

1   been relevant for the jury's consideration.  But, you know,

2   my job at this point is to determine what the reasonable

3   factual inferences are from the government's evidence at

4   trial that the jury seemed to -- well, the jury did find

5   beyond a reasonable doubt to support the convictions in

6   determining what his sentence should be.  And that's why I'm

7   a little perplexed as to why there's any relevancy to this

8   for purposes of sentencing determination.

9           MR. PEED:  Because, Your Honor, this wasn't a

10  firearms-type offense where the conviction itself carries

11  with it a finding by the jury of certain facts.

12          There were upwards of 20 people the government

13  alleged to be conspirators.  There's lots of facts the

14  government alleges --

15          THE COURT:  So, Mr. Peed, let me ask you this:

16  If I were to agree with, say -- I mean say -- you want me to

17  embrace Mr. Carter's testimony that Mr. Vallejo made no

18  motion toward getting firearms, and that he, in fact, with

19  Mr. Kandaris, were talking about going in to get people out.

20  I mean, those were the two things that you've said

21  Mr. Carter would say, perhaps, among other things.

22          I mean, that is fundamentally at odds with what

23  the government's theory of the case was.  And, you know, the

24  defense had an opportunity to present those facts, it made a

25  decision not to.  And I'm not quite -- I don't quite

1    understand now that you're asking me to find -- and say I

2    were to agree, I mean, are you asking me that I would then

3    embrace Mr. Carter's testimony as fact?  And then what?  And

4    then how do I then, in your view, sustain the jury's

5    convictions?

6         MR. PEED:  Well, the jury was hearing evidence

7    that Mr. Vallejo cheered on the attack.  You know, there was

8    the joke he made about taking over the Arizona Capitol.

9    There was the Olive Garden meeting.  There was the, "I'm not

10   going anywhere text," "We're at war," text.  There's lots of

11   the government's evidence where the jury could infer and

12   conclude Mr. Vallejo was a conspirator.

13        Now, most of the conspirators went to the Capitol,

14   they went unarmed.  You know, they went in for a few

15   minutes, they came out.  And so there's a huge gulp between

16   someone agreed with what was happening and someone was

17   prepared to bring firearms.

18        THE COURT:  Well --

19        MR. PEED:  And the jury could have rejected --

20   certainly beyond a reasonable doubt, the jury could have

21   said, look, we don't know what these texts mean.  The text

22   says, "How can I assist?"  And it happened before the 2:35

23   call.

24        THE COURT:  Yeah, but now you're making a jury

25   argument to me.

1           And this is what I don't quite -- I don't

2    understand, which is, I mean, it's not clear to me how the

3    jury could have concluded guilt just based upon text

4    messages and Mr. Vallejo's presence at the hotel unless they

5    also concluded that he was prepared to, as part of being at

6    the hotel and being with those weapons, to bring them in.

7    Otherwise, he's just sitting on some weapons.

8           And, you know, the fact that he's cheering them on

9    doesn't rise to a criminal conviction.  I mean --

10          MR. PEED:  It could reflect agreement, Your Honor.

11          THE COURT:  The fact that he's cheering them on?

12   That doesn't reflect an agreement.  All it does is mean they

13   agree with the purpose or what they're doing.  But that's

14   not an agreement in the criminal sense.  And it's not

15   evidence that he -- or it's the opposite of the inference

16   that he, in fact, joined the conspiracy.

17          MR. PEED:  I appreciate the Court defining that

18   line, because I certainly think the evidence was lacking

19   there.

20          But I think the jury could have found --

21          THE COURT:  But the jury found otherwise.

22          I mean, I'm having a hard time understanding what

23   the jury's verdict could have been of guilt across the

24   board, including the 1512(f) -- excuse me, 1512(k), and the,

25   I guess it's the 231 conviction, the other conspiracies, and

9

1    the substantive 1512 count, unless they also concluded that

2    he was prepared to come in with the firearms, and that he

3    was either aiding and abetting the substantive count or --

4    and was conspiring by being prepared to come in with them.

5         MR. PEED:  I think, respectfully, Your Honor, the

6    jury could have concluded that at 2:24 and 2:38, Mr. Vallejo

7    did know what was going on.  But that as reports came in and

8    he learned that Oath Keepers had gone into the building and

9    he didn't take action to report them.  And, in fact, he

10   expressed that, "We have people inside taking pictures."

11        And then he offered what the jury -- what the

12   government argued was getaway rides.

13        And then he went to the Olive Garden, the argument

14   argued that he cheered it on.

15        The jury could have easily concluded Mr. Vallejo

16   joined this conspiracy at 3:00 p.m. and stayed with it until

17   he was arrested.

18        THE COURT:  How could he have joined a conspiracy

19   at 3:00 p.m., particularly on the 1512(k) and the 231 count,

20   when those conspiracies effectively ended when the last

21   person walked down to the Capitol?

22        MR. PEED:  Mr. Minuta didn't go in until 3:30.

23   So Mr. Vallejo starts hearing that people are going in

24   around 3:00 p.m. and --

25

1          THE COURT:  Right.

2          But you've taken the view and you've said that

3     there's no evidence -- and you argued to the jury -- there's

4     no evidence he knew any Oath Keepers were going in.

5          MR. PEED:  I lost that argument.

6          THE COURT:  I know.

7          And I guess I don't understand how -- I mean,

8     you're bringing in Mr. Carter to say effectively that

9     Mr. Vallejo had no intention to bring weapons into the

10    District of Columbia except to exfiltrate people, right?

11         MR. PEED:  Yes, Your Honor.  That part is --

12         THE COURT:  And so that seems to me to be a state

13    of mind that is entirely inconsistent with, and, frankly,

14    would negate, if the jury had received such evidence and

15    accepted it, the state of mind required to find him guilty

16    of three conspiracy counts and a substantive offense.

17         MR. PEED:  But, Your Honor, you don't need

18    firearms -- the government also argued to the jury, you

19    don't need firearms to stop a proceeding when you have a

20    mob.

21         And so if the jury believed that Mr. Vallejo in

22    spirit was with that mob and was with the Oath Keepers and,

23    in agreement, was with them and was even willing to give

24    them rides if that's what they wanted, you know, getaway

25    rides, that's also part of the conspiracy.

1    So if the jury credited the government's very

2    argument at trial, they could have certainly found

3    Mr. Vallejo, Mr. Kandaris, Mr. Caldwell, all these people

4    who didn't go in were part of the agreement to go in.

5    THE COURT:  Well, let me ask you a different

6    question, which is, what will Mr. Carter say if he's allowed

7    to testify -- what more is he going to say than what he's

8    already said in his letter and the grand jury testimony that

9    you've put in front of me?

10    MR. PEED:  What I heard was new when I -- and

11    I wanted to get the email out as soon as I heard it.

12    What I heard that was new was that not just that

13    he never touched a firearm, and so when he said "outfitted,"

14    he wasn't armed.  But that when he was sending those

15    messages about, "Hey, I have two trucks available, let me

16    know how I can assist," that he and Mr. Kandaris were

17    talking about getting people out of the Capitol.

18    So it's a very specific period of time.  In fact,

19    it's a very early period of time.  And it's not at all

20    necessary for the government's theory -- it's not at all

21    necessary for the conviction that Mr. Vallejo at that period

22    of time was intending to bring firearms.  And he wasn't

23    intending to bring firearms.  And there's no evidence other

24    than these ambiguous texts that that's what he was intending

25    to do.

1          THE COURT:  Mr. Peed, don't tell me there's no

2    evidence.  I mean, a jury convicted your client beyond a

3    reasonable doubt of very serious felonies.  So, you know,

4    I'm --

5          MR. PEED:  But not the firearms, Your Honor.

6          THE COURT:  I'm sorry?

7          MR. PEED:  I'm embracing the conviction.

8          What I'm saying is that was not a firearms

9    conviction.

10         Usually under *Apprendi*, the government has --

11         THE COURT:  Mr. Peed, I don't -- this is not a

12   firearms possession case, and it's not a case in which the

13   penalty is enhanced by firearm possession.  So I understand

14   that there was no requirement that the jury actually make a

15   specific finding.  So I get that.

16         Let me hear from Mr. Edwards.

17         MR. EDWARDS:  Yes, Your Honor.

18         We've put most of our position in our written

19   submission to the Court last night.

20         One thought that I'd like to add to the record is

21   that the Court's focus on the 1512(k) and the 15(c)(2)

22   [sic] -- 1512(c)(2) is right in the sense that the jury has

23   found Mr. Vallejo guilty of obstructing the proceeding, not

24   the broader conspiracy but the more narrower conspiracy that

25   day, which ties Mr. Peed's factual proffer to the Court more

1    closely to his innocence.

2              I would just like to add to Mr. Peed's point about

3    the jury not finding anything related to Mr. Vallejo's

4    intent as to with firearms.

5              He was also found guilty of Count 1, which

6    includes agreeing to use force.  And as the government

7    presented evidence of him bringing those firearms, that

8    force, the jury has found beyond a reasonable doubt that

9    Mr. Vallejo also agreed with the other co-conspirators to

10   use that force to stop the transfer of power.  And part of

11   the government's argument was that, yes, that included his

12   use of firearms to use force to stop that transfer of power.

13             So really the Court -- the government's position

14   here is, although the Court has broad discretion to consider

15   and not consider certain evidence, Mr. Peed has not put

16   forth why this is not just an innocence argument packaged as

17   a factual disagreement.

18             MR. PEED:  May I respond, Your Honor?

19             THE COURT:  Sure.

20             MR. PEED:  So as the Court knows, force -- as the

21   Court has held, force can include pushing past those police.

22             And so my point in bringing this witness is that

23   we don't know to what level the jury credited the argument

24   about two specific texts.

25             We do know the jury credited Mr. Vallejo was part

1   of a conspiracy, and that conspiracy included people pushing

2   past police, going in the Rotunda, stuff about looking for

3   Pelosi, all the stuff the government put on.  We just don't

4   know, and for mitigation purposes, whether Mr. Vallejo used

5   that firearm.

6           THE COURT:  So your view is the jury credited all

7   this other stuff, but in your view we don't know that they

8   credited the inference that Mr. Vallejo was prepared to

9   bring weapons in based upon the evidence that was brought in

10  at trial?

11          MR. PEED:  Absolutely, Your Honor.

12          There's just two messages, along with every

13  witness said, they were not thinking that a QRF was going to

14  bring them weapons, and there's evidence about what a QRF

15  means.

16          So all that is the government's spin on those

17  messages, and I think it's very useful to know what actually

18  was happening when he sent those messages.  That does not go

19  to guilt or innocence.  He's been found guilty, and I'm

20  embracing that.

21          And if I give the Court an example kind of in

22  reverse, I had a Benghazi case where the government's proof

23  failed.  My client was charged with arson, killing an

24  ambassador and property damage, and the jury only convicted

25  him of property damage.

1          But then at sentencing, the government put on lots

2     of more factual witnesses and expert testimony to try to

3     establish that he actually was guilty of the arson and the

4     murder of the ambassador, and the Court credited that and

5     sentenced him to 20 years for property damage.

6          It's sort of -- it's the reverse of what's

7     happening.  The government got their conviction here, but we

8     don't know what the -- and that just sets the sentencing

9     range.

10         But Mr. Vallejo could get a higher range if he was

11    going to storm the Capitol with weapons, and should get a

12    lower end of that range if, like other conspirators, he

13    agreed with the idea of stopping Congress, they went in and

14    did it and Mr. Vallejo cheered it on, but they were all part

15    of an agreement to stop Congress.

16         THE COURT:  You keep talk about "cheering it on."

17         I'm dumbfounded that your description that a jury

18    could have convicted him of conspiracy just because he

19    "cheered it on."

20         I mean, I don't see how that squares with the

21    rigorous demands of the elements of the case -- of the

22    offenses, including the substantive offense.

23         MR. PEED:  I looked at the jury instructions,

24    Your Honor, and the Court rightfully instructed that it does

25    not matter how long the defendants' agreement lasted.

1    If the defendant -- duration does not matter.

2            If the defendant for one second agreed and joined

3    this conspiracy, he doesn't have to do anything, he doesn't

4    have to last a long time, he just has to agree with it.

5    That's all.

6            So I think a jury looking at this could very

7    easily say, okay, this guy is on trial, let's look at what

8    he said.  Did he agree with this or not?  Looks like he

9    agreed with it.

10            THE COURT:  It is different to agree with a

11    sentiment versus agreeing with a criminal object and then

12    joining the conspiracy, right?

13            It's not just an agreement, it's that he --

14    it's an agreement -- agreement not in the sense of agree

15    versus disagree.  It is agreement as in a mutual

16    understanding, a meeting of the minds to do some thing, and

17    that then he knowingly joins that effort to do that criminal

18    object.

19            That's what a conspiracy is.  It's not just that I

20    agree with what you're trying to accomplish.

21            MR. PEED:  Agreeing to stop the count.

22    It's agreeing to interrupt Congress.  That's the agreement.

23            THE COURT:  An agreement to do something.

24            It's not just an agreement that I agree with what

25    you're doing.  I support you as a general proposition

1  because I agree with your cause.  That's not what the jury

2  could have concluded and found Mr. Vallejo guilty.

3           MR. PEED:  But when he said, for example, "We'll

4  be back at 6:00 a.m. to do it again," he's saying, we will

5  do it again.  He's including himself as part of a group that

6  has now interrupted Congress and -- or hindered and delayed

7  it.  And he's expressing a sentiment, we'll go be at

8  Congress tomorrow.

9           And the jury could have read that and said, okay,

10  here's a guy who's considering himself part of the team,

11  part of the conspiracy, part of the group that did this.

12           That says nothing about the meaning of ambiguous

13  text.  It just says, here's a guy who was there, who was

14  going to go there in the morning and then he lost his truck

15  but he all along was part of this group and he wants to do

16  it again at 6:00 a.m. the next day.

17           THE COURT:  Let me ask the government this:

18  If Mr. Carter were to testify, would the government ask to

19  cross-examine him?  And if it did, what would your

20  essentially theory of the case be?

21           I know he was put in the grand jury.  You've

22  obviously indicted Mr. Vallejo notwithstanding whatever

23  Mr. Carter said to the grand jury.  The government must have

24  a view about his testimony and what it means for its case

25  and its theory of the case.

1      MR. EDWARDS:  Yes, Your Honor.

2      We would request an opportunity to cross-examine

3  Mr. Carter.

4      And I would like to answer the Court's question

5  but also reserve the right to kind of keep our themes of our

6  cross, frankly, open until we hear what his actual testimony

7  is going to be tomorrow.

8      But themes of the cross will include his lack of

9  involvement in the organization as compared to Mr. Vallejo

10  and Mr. Kandaris.  And it will involve some of Mr. Carter's

11  own statements to the government and to the grand jury about

12  his interactions with Mr. Vallejo on the way to D.C. and

13  what he said in the hotel and why he left.

14      And so I'm happy to get a little more specific,

15  but, again, I'm reserving the opportunity here to be --

16  sorry, I've got some sirens going outside the office -- but

17  I would like to reserve the opportunity to kind of keep this

18  open-ended and to see how he testifies.

19      The theory of the case from the government's

20  perspective is no different.

21      I mean, what Mr. Peed is offering here is

22  testimony --

23      THE COURT:  Sorry, Mr. Edwards.

24      MR. EDWARDS:  Go ahead.

25

1    THE COURT:  Let me just ask the question

2    pointedly, is that:  Does the government not credit what

3    Mr. Carter's purported testimony is; that is, that

4    Mr. Vallejo never went for the weapons; and, two, that he

5    and Mr. Kandaris talked about coming in just to essentially

6    help people?

7    MR. EDWARDS:  Correct, we do not credit that.

8    We find that that evidence is -- well, I'm happy to go

9    further if you'd like, but we do not credit that.

10    I will note for Your Honor, the defendant, while

11    he has a due-process right at sentencing that is lesser than

12    his due-process right at trial, he admittedly has

13    due-process rights to present to Your Honor factual

14    inaccuracies, taking facts that the Court has been presented

15    and making sure that they are not materially inaccurate.

16    The case law is clear on that.

17    That's not what Mr. Peed and Mr. Carter's

18    proffered testimony is doing here.  There is not a piece of

19    evidence that Mr. Peed is pointing to to say, this is

20    materially inaccurate.  He's pointing to arguments from the

21    government and inferences.  That is not the same thing as

22    pointing out that something the government -- some evidence

23    before the Judge is materially inaccurate.

24    And so what he's doing here is packaging up an

25    innocence argument and disguising it, frankly, as a factual

1    discrepancy, which it is not.

2              THE COURT:  Okay.

3              All right.  So I think this is where I'm coming

4    out, which is, I'm not going to take Mr. Carter's testimony.

5              You know, first and foremost, the case law is

6    clear that the defendant does not have a due-process right

7    to present a witness at a sentencing, and certainly no

8    due-process right to present a witness that will attempt to

9    establish a factual record that is inconsistent with, in my

10   view, what the jury's verdict was here and certainly the

11   government's theory of the case.

12             Two, Rule 32 does not authorize a defendant to --

13   does not permit -- I shouldn't say "permit."  Does not give

14   a defendant the right to call someone to testify at a

15   trial -- excuse me, at a sentencing.  It's only the

16   government, the defense counsel, the defendant himself, and

17   any victims that are -- have a right under the Rule to

18   testify or to be heard.

19             The government's case law that it cites makes

20   clear that the Court can decline to hear testimony that it

21   believes is essentially an effort to relitigate the facts

22   of -- and establish innocence, which I think this exactly

23   is.

24             And I think Mr. Peed's theory that somehow the

25   jury could have minimally established that Mr. Vallejo was a

1    part of this conspiracy because he was cheering them on is

2    just not at all consistent with what the instructions are.

3              And the instructions very specifically establish

4    that Mr. Vallejo had to come to a mutual understanding, an

5    agreement, not just simply agree with, but an actual

6    agreement to carry out the objects of the conspiracy as they

7    were charged, the multiple conspiracies; and, two, that he

8    willingly joined that conspiracy in order to further the

9    purposes of the conspiracy, not simply just cheered his --

10   you know, cheered people on.

11             And central to the government's entire theory of

12   the case was that Mr. Vallejo was manager of the weapons

13   that were stored, and that he offered to come in to support

14   the Oath Keepers' efforts that day, and that's how he

15   exhibited his involvement in the conspiracy.  That was the

16   government's theory at opening, that was the government's

17   theory at closing, and that's what the presentation of

18   evidence was.

19             And the defense, again, chose not to call

20   Mr. Carter in its case.  And essentially his proffered

21   testimony here would be an effort to negate the inferences

22   that can be reasonably drawn, and I believe the jury did

23   draw, from the evidentiary record that was presented at

24   trial.  So I don't think there's actual relevance to the

25   ultimate question at sentencing here in this case.

1          And I'll just cite some of the cases the

2     government has, which is *United States versus Hughes*,

3     37 F.3d 1496 from the Fourth Circuit.  It's an unpublished

4     decision but, nevertheless, stands for the proposition that

5     the District Court did not abuse its discretion because the

6     witness's supposed testimony would relate to the defendant's

7     guilt or innocence already determined by the jury.

8          Similarly in *United States versus*

9     *Cruzado-Laureano*, 527 F.3d 231, the First Circuit came to a

10    similar conclusion.

11         So there's a real doubt in my mind as to the

12    probative value of the testimony.

13         But also, importantly, you know, sentencings are

14    not intended to become mini trials about factual disputes

15    unless they relate directly to an issue that is the subject

16    of potential enhancement.  And, you know, that is not this;

17    that's not what is being proposed here.

18         And what I'm hearing from the government is that

19    they find Mr. Carter not to be -- his view not to be

20    credible; that there are additional facts that Mr. Carter's

21    testimony would bring forth that would require the Court at

22    a sentencing to make certain factual determinations and

23    essentially create a mini trial as to Mr. Carter's

24    credibility, and I don't think that's the purpose of

25    sentencing here in terms of determining what Mr. Vallejo's

1  ultimate culpability and ultimate sentence ought to be.

2          And then finally, I don't need to hear from him.

3  I've got his letter, I've got the grand jury testimony, and

4  I've got counsel's proffer.  So, you know, actually hearing

5  from him, I don't think I am going to -- is not necessary,

6  given what I already think is a relatively low probative

7  value of the evidence, and, frankly, the lack of relevance

8  of the evidence for what I'm supposed to consider here at

9  sentencing.

10          So for those reasons, I'm going to decline to hear

11 Mr. Carter's testimony based upon the proffer of defense

12 counsel, okay?

13          All right.  Anything else before we adjourn?

14          MR. EDWARDS:  Not from the government, Your Honor.

15          MR. PEED:  No, Your Honor.

16          THE COURT:  All right.  Thank you all very much.

17          (Proceedings concluded at 4:16 p.m.)

18

19

20

21

22

23

24

25

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__March 22, 2024_____     _____

                                         William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [1]** 3/2
**MR. EDWARDS: [5]** 12/17 18/1 18/24 19/7 23/14
**MR. PEED: [21]** 4/16 6/9 7/6 7/19 8/10 8/17 9/5 9/22 10/5 10/11 10/17 11/10 12/5 12/7 13/18 13/20 14/11 15/23 16/21 17/3 23/15
**THE COURT: [25]**

**1**
**11 [2]** 1/4 3/3
**1150 [1]** 2/3
**1496 [1]** 22/3
**15 [1]** 12/21
**1512 [6]** 8/24 8/24 9/1 9/19 12/21 12/22
**1775 [1]** 2/3

**2**
**20 [2]** 6/12 15/5
**20001 [1]** 2/9
**20006 [1]** 2/4
**202 [3]** 1/17 2/4 2/9
**2023 [1]** 1/5
**2024 [1]** 24/7
**20579 [1]** 1/16
**22 [1]** 24/7
**22-15-11 [2]** 1/4 3/3
**231 [3]** 8/25 9/19 22/9
**252-7277 [1]** 1/17
**2:24 [1]** 9/6
**2:35 [1]** 7/22
**2:38 [1]** 9/6

**3**
**31 [1]** 1/5
**32 [1]** 20/12
**3249 [1]** 2/9
**333 [1]** 2/8
**354-3249 [1]** 2/9
**37 F.3d [1]** 22/3
**3:00 [3]** 9/16 9/19 9/24
**3:30 [1]** 9/22
**3:48 [1]** 1/6

**4**
**4:16 [1]** 23/17

**5**
**527 [1]** 22/9

**6**
**601 [1]** 1/16
**6:00 [2]** 17/4 17/16
**6th [1]** 3/21

**7**
**7277 [1]** 1/17

**9**
**919-9491 [1]** 2/4
**9491 [1]** 2/4

**A**
**a.m [2]** 17/4 17/16
**abetting [1]** 9/3
**about [19]** 3/20 3/22 4/15 4/24 5/2 6/19 7/8 11/15 11/17 13/2 13/24 14/2 14/14 15/16 17/12 17/24 18/11 19/5 22/14
**above [1]** 24/4
**above-titled [1]** 24/4
**Absolutely [1]** 14/11
**abuse [1]** 22/5
**accepted [1]** 10/15
**accomplish [1]** 16/20
**across [1]** 8/23
**action [1]** 9/9
**actions [1]** 3/20
**actual [3]** 18/6 21/5 21/24
**actually [5]** 4/25 12/14 14/17 15/3 23/4
**add [2]** 12/20 13/2
**addition [1]** 5/7
**additional [1]** 22/20
**address [1]** 3/15
**adjourn [1]** 23/13
**admittedly [1]** 19/12
**afternoon [3]** 3/2 3/10 3/11
**again [5]** 17/4 17/5 17/16 18/15 21/19
**agree [11]** 6/16 7/2 8/13 16/4 16/8 16/10 16/14 16/20 16/24 17/1 21/5
**agreed [5]** 7/16 13/9 15/13 16/2 16/9
**agreeing [4]** 13/6 16/11 16/21 16/22
**agreement [16]** 8/10 8/12 8/14 10/23 11/4 15/15 15/25 16/13 16/14 16/14 16/15 16/22 16/23 16/24 21/5 21/6
**ahead [1]** 18/24
**aided [1]** 2/11
**aiding [1]** 9/3
**Alexandra [2]** 1/14 3/5
**all [20]** 3/10 4/18 5/11 5/11 5/17 8/12 11/3 11/19 11/20 14/3 14/6 14/16 15/14 16/5 17/15 20/3 21/2 23/13 23/16 23/16
**alleged [1]** 6/13
**alleges [1]** 6/14
**allowed [1]** 11/6
**along [3]** 4/1 14/12 17/15
**already [3]** 11/8 22/7 23/6
**also [9]** 4/8 8/5 9/1 10/18 10/25 13/5 13/9 18/5 22/13
**although [1]** 13/14
**am [1]** 23/5
**ambassador [2]** 14/24

**ambiguous [2]** 11/24 17/12
**AMERICA [2]** 1/3 3/3
**AMIT [1]** 1/9
**among [1]** 6/21
**answer [1]** 18/4
**any [5]** 4/14 4/14 6/7 10/4 20/17
**anything [3]** 13/3 16/3 23/13
**anywhere [1]** 7/10
**APPEARANCES [2]** 1/13 1/18
**appeared [1]** 3/24
**appearing [1]** 3/8
**appreciate [1]** 8/17
**Apprendi [3]** 5/9 5/10 12/10
**Apprendi-like [1]** 5/10
**appropriate [1]** 4/10
**appropriateness [1]** 3/23
**are [10]** 4/23 5/4 6/3 7/2 9/23 19/15 20/17 21/2 22/13 22/20
**argue [1]** 5/20
**argued [4]** 9/12 9/14 10/3 10/18
**argument [9]** 5/12 7/25 9/13 10/5 11/2 13/11 13/16 13/23 19/25
**arguments [1]** 19/20
**Arizona [1]** 7/8
**armed [1]** 11/14
**around [1]** 9/24
**arrested [1]** 9/17
**arson [2]** 14/23 15/3
**as [21]** 4/17 6/7 7/3 8/5 9/7 11/11 11/11 11/3 13/6 13/16 13/20 13/20 16/15 16/25 17/5 18/9 19/21 19/25 21/6 22/11 22/23
**ask [5]** 6/15 11/5 17/17 17/18 19/1
**asking [4]** 4/4 7/1 7/2
**assist [2]** 7/22 11/16
**assumed [1]** 5/2
**attack [1]** 7/7
**attempt [1]** 20/8
**ATTORNEY'S [1]** 1/15
**authorize [1]** 20/12
**available [2]** 3/13 11/15
**Avenue [1]** 2/8

**B**
**back [1]** 17/4
**Barrett [1]** 2/8
**based [3]** 8/3 14/9 23/11
**be [15]** 4/11 6/6 6/13 10/12 17/4 17/7 17/20 18/7 18/15 20/18 21/21 21/22 22/19 22/19 23/1
**because [6]** 6/9 8/18 15/18 17/1 21/1 22/5

**been [4]** 6/1 8/23 14/19 19/14
**before [4]** 1/9 7/22 19/23 23/13
**behalf [1]** 3/7
**being [4]** 8/5 8/6 9/4 22/17
**believe [1]** 21/22
**believed [1]** 10/21
**believes [1]** 20/21
**Benghazi [1]** 14/22
**between [2]** 4/24 7/15
**beyond [2]** 6/5 7/20 12/2 13/8
**board [1]** 8/24
**bodily [1]** 5/5
**bring [2]** 5/13 5/22 7/17 8/6 10/9 11/22 11/23 14/9 14/14 22/21
**bringing [1]** 10/8 13/7 13/22
**broad [1]** 13/14
**broader [1]** 12/24
**brought [1]** 14/9
**building [1]** 9/8

**C**
**Caldwell [1]** 11/3
**call [3]** 7/23 20/14 21/19
**called [1]** 5/22
**came [3]** 7/15 9/7 22/9
**can [5]** 7/22 11/16 13/21 20/20 21/22
**Capitol [5]** 7/8 7/13 9/21 11/17 15/11
**carries [1]** 6/10
**carry [1]** 21/6
**Carter [11]** 3/17 3/19 4/7 6/21 10/8 11/6 17/18 17/23 18/3 21/20 22/19
**Carter's [10]** 5/24 6/17 7/3 18/10 19/3 19/17 20/4 22/20 22/23 23/11
**case [17]** 3/3 6/23 12/12 12/12 14/22 15/21 17/20 17/24 17/25 18/19 19/16 20/5 20/11 20/19 21/12 21/20 21/25
**cases [2]** 4/13 22/1
**cast [1]** 3/24
**cause [1]** 5/5 17/1
**central [1]** 21/11
**certain [1]** 6/11 13/15 22/22
**certainly [6]** 5/25 7/20 8/18 11/2 20/7 20/10
**Certified [1]** 2/7
**certify [1]** 24/2
**cetera [1]** 4/21
**CH [1]** 2/8
**chance [1]** 4/12
**charged [2]** 14/23 21/7
**cheered [6]** 7/7 9/14 15/14 15/19 21/9 21/10

**cheering [4]** 8/8 8/11 15/16 21/1
**chose [1]** 21/19
**Circuit [2]** 22/3 22/9
**cite [1]** 22/1
**cited [1]** 4/14
**cites [1]** 20/19
**city [1]** 5/22
**clear [4]** 8/2 19/16 20/6 20/20
**client [2]** 12/2 14/23
**CLINTON [1]** 2/2
**clintonpeed.com [1]** 2/5
**closely [1]** 13/1
**closing [1]** 21/17
**co [1]** 13/9
**co-conspirators [1]** 13/9
**COLUMBIA [2]** 1/1 10/10
**come [4]** 9/2 9/4 21/4 21/13
**coming [2]** 19/5 20/3
**compared [1]** 18/9
**computer [1]** 2/11
**computer-aided [1]** 2/11
**conclude [1]** 7/12
**concluded [7]** 8/3 8/5 9/1 9/6 9/15 17/22 23/17 22/14
**conclusion [1]** 22/10
**conduct [1]** 4/23
**CONFERENCE [1]** 1/9
**Congress [6]** 4/21 15/13 15/15 16/22 17/6 17/8
**consider [3]** 13/14 13/15 23/8
**consideration [1]** 6/1
**considering [1]** 17/10
**consistent [1]** 21/2
**conspiracies [3]** 8/25 9/20 21/7
**conspiracy [19]** 8/16 9/16 9/18 10/16 10/25 12/24 12/24 14/1 14/1 15/18 16/3 16/12 16/19 17/11 21/1 21/6 21/8 21/9 21/15
**conspirator [1]** 7/12
**conspirators [4]** 6/13 7/13 13/9 15/12
**conspired [1]** 4/19
**conspiring [1]** 9/4
**Constitution [1]** 2/8
**CONTINUED [1]** 2/1
**convicted [3]** 12/2 14/24 15/18
**conviction [7]** 6/10 8/9 8/25 11/21 12/7 12/9 15/7
**convictions [2]** 6/5 7/5
**core [2]** 5/3 5/3
**correct [2]** 19/7 24/3
**could [18]** 3/25 7/11 7/19 7/20 8/3 8/10 8/20 8/23 9/6 9/15 9/18 11/2

**C**

could... [6]  15/10 15/18 16/6 17/2 17/9 20/25
counsel [2]  20/16 23/12
counsel's [1]  23/4
count [5]  9/1 9/3 9/19 13/5 16/21
Count 1 [1]  13/5
counts [1]  10/16
COURT [21]  1/1 2/6 2/7 4/6 4/22 5/2 5/7 8/17 12/19 12/25 13/13 13/14 13/20 13/21 14/21 15/4 15/24 19/14 20/20 22/5 22/21
Court's [5]  5/14 12/21 18/4
CR [1]  1/4
create [1]  22/23
credibility [2]  22/24
credible [1]  22/20
credit [3]  19/2 19/7 19/9
credited [6]  11/1 13/23 13/25 14/6 14/8 15/4
criminal [5]  3/3 3/9 8/14 16/11 16/17
cross [4]  17/19 18/2 18/6 18/8
cross-examine [2]  17/19 18/2
CRR [2]  24/2 24/8
Cruzado [1]  22/9
Cruzado-Laureano [1]  22/9
culpability [1]  23/1

**D**

D.C [5]  1/5 1/16 2/4 2/9 18/12
damage [3]  14/24 14/25 15/5
Date [1]  24/7
day [3]  12/25 17/16 21/14
decision [2]  6/25 22/4
decline [3]  4/7 20/20 23/10
defendant [12]  1/7 2/2 2/8 5/4 5/5 16/1 16/2 19/10 20/6 20/12 20/14 20/16
defendant's [1]  22/6
defendants' [1]  15/25
defense [3]  3/7 6/24 20/16 21/19 23/11
defining [1]  8/17
delay [1]  4/20
delayed [1]  17/6
demands [1]  15/21
description [1]  15/17
designed [1]  3/24
determination [1]  6/8
determinations [1]  22/22
determine [3]  4/22 5/7 6/2

determined [1]  22/1
determining [2]  6/6 22/25
did [11]  5/4 5/5 5/20 6/4 9/7 15/14 16/8 17/11 17/19 21/22 22/5
didn't [3]  9/9 9/22 11/4
differences [1]  4/24
different [3]  11/5 16/10 18/20
directly [1]  22/15
disagree [1]  16/15
disagreement [1]  13/17
discrepancy [1]  20/1
discretion [3]  4/7 13/14 22/5
disguising [1]  19/25
disputes [1]  22/14
DISTRICT [5]  1/1 1/1 1/10 10/10 22/5
District Court [1]  22/5
do [13]  5/22 7/4 11/25 13/25 16/3 16/16 16/17 16/23 17/4 17/5 17/15 19/7 19/9
docket [1]  4/3
does [9]  8/12 14/18 15/24 16/1 19/2 20/6 20/12 20/13 20/13
doesn't [4]  8/9 8/12 16/3 16/3
doing [4]  8/13 16/25 19/18 19/24
don't [19]  4/12 6/25 7/21 8/1 8/1 10/7 10/17 10/19 12/1 12/11 13/23 14/3 14/7 15/8 15/20 21/24 22/24 23/2 23/5
doubt [6]  3/24 6/5 7/20 12/3 13/8 22/11
down [1]  9/21
draw [1]  21/23
drawn [2]  3/25 21/22
due [5]  19/11 19/12 19/13 20/6 20/8
due-process [5]  19/11 19/12 19/13 20/6 20/8
dumbfounded [1]  15/17
duration [1]  16/1

**E**

early [1]  11/19
easily [2]  9/15 16/7
EDWARD [1]  1/6 3/4
Edwards [4]  1/14 3/5 12/16 18/23
effectively [2]  9/20 10/8
effort [3]  16/17 20/21 21/21
efforts [1]  21/14
either [2]  3/18 9/3
element [1]  5/8
elements [1]  15/21
else [1]  23/13
email [5]  1/17 2/5 4/2

embrace [2]  6/17 7/3
embracing [2]  12/7 14/20
end [1]  15/12
ended [2]  9/20 18/18
enhanced [1]  12/13
enhancement [2]  5/7 22/16
entire [1]  21/11
entirely [1]  10/13
essence [1]  4/4
essentially [9]  4/5 4/5 4/8 4/9 17/20 19/5 20/21 21/20 22/23
establish [4]  15/3 20/9 20/22 21/3
established [1]  20/25
et [1]  4/21
et cetera [1]  4/21
even [1]  10/23
every [1]  14/12
everybody [3]  3/10 3/12 3/15
evidence [22]  4/1 4/25 6/3 7/6 7/11 8/15 8/18 10/3 10/4 10/14 11/23 12/2 13/7 13/15 14/9 14/14 19/8 19/19 19/22 21/18 23/7 23/8
evidentiary [1]  21/23
exactly [1]  20/22
examine [2]  17/19 18/2
example [2]  14/21 17/3
except [1]  10/10
excuse [2]  8/24 20/15
execution [1]  4/20
exfiltrate [1]  10/10
exhibited [1]  21/15
expert [1]  15/2
expressed [1]  9/10
expressing [1]  17/7
Eye [1]  2/3

**F**

F.3d [2]  22/3 22/9
fact [7]  6/18 7/3 8/8 8/11 8/16 9/9 11/18
facts [6]  6/11 6/13 6/24 19/14 20/21 22/20
factual [10]  4/5 6/3 12/25 13/17 15/2 19/13 19/25 20/9 22/14 22/22
failed [1]  14/23
felonies [1]  12/3
few [1]  7/14
fill [1]  4/5
finally [1]  23/2
find [5]  6/4 7/1 10/15 19/8 22/19
finding [5]  5/10 6/11 12/15 13/3
firearm [5]  5/4 5/5 11/13 12/13 14/5
firearms [16]  5/10 5/12 6/10 6/18 7/17 9/2 10/18 10/19 11/22 11/23 12/5 12/8 12/12

firearms-type [1]  6/10
first [2]  20/5 22/9
First Circuit [1]  22/9
focus [1]  12/21
force [6]  13/6 13/8 13/10 13/12 13/20 13/21
foregoing [1]  24/3
foremost [1]  20/5
forth [2]  13/16 22/21
found [10]  4/19 5/8 8/20 8/21 11/2 12/23 13/5 13/8 14/19 17/2
Fourth [1]  22/3
frankly [4]  10/13 18/6 19/25 23/7
front [1]  11/9
fundamentally [1]  6/22
further [2]  19/9 21/8

**G**

Garden [2]  7/9 9/13
general [1]  16/25
germane [1]  4/9
get [7]  3/15 6/19 11/11 12/15 15/10 15/11 18/14
getaway [2]  9/12 10/24
getting [2]  6/18 11/17
give [3]  10/23 14/21 20/13
given [3]  3/23 4/7 23/6
go [10]  5/3 5/6 9/22 11/4 11/4 14/18 17/7 17/14 18/24 19/8
going [16]  5/13 6/19 7/10 9/7 9/23 10/4 11/7 14/2 14/13 15/11 17/14 18/7 18/16 20/4 23/5 23/10
gone [1]  9/8
good [3]  3/2 3/10 3/11
Good afternoon [1]  3/10
got [5]  15/7 18/16 23/3 23/3 23/4
government [27]
government's [16]  4/13 6/3 6/23 7/11 11/1 11/20 13/11 13/13 14/16 14/22 18/19 20/11 20/19 21/11 21/16 21/16
grand [5]  11/8 17/21 17/23 18/11 23/3
group [3]  17/5 17/11 17/15
guess [5]  5/1 5/16 5/18 8/25 10/7
guilt [5]  4/18 8/3 8/23 14/19 22/7
guilty [6]  10/15 12/23 13/5 14/19 15/3 17/2
gulp [1]  7/15
guy [4]  5/12 16/7 17/10 17/13

had [9]  4/12 4/14 5/21 6/24 9/8 10/9 10/14 14/22 21/4
happened [1]  7/22
happening [3]  7/16 14/18 15/7
happy [3]  4/15 18/14 19/8
hard [1]  8/22
has [16]  4/7 4/19 5/12 5/19 12/10 12/22 13/8 13/14 13/15 13/21 16/4 17/6 19/11 19/12 19/14 22/2
have [25]
having [4]  3/23 8/22
he [54]
he said [1]  11/13
he wasn't [1]  11/14
he's [11]  8/7 8/8 8/11 11/6 11/7 14/19 17/4 17/5 17/7 19/20 19/24
hear [7]  4/7 4/15 12/16 18/6 20/20 23/2 23/10
heard [4]  11/10 11/11 11/12 20/18
hearing [5]  3/17 7/6 9/23 22/18 23/4
held [1]  13/21
help [1]  19/6
here [13]  5/9 13/14 15/7 18/15 18/21 19/18 19/24 20/10 21/21 21/25 22/17 22/25 23/8
here's [2]  17/10 17/13
Hey [1]  11/15
higher [1]  15/10
him [9]  3/21 10/15 13/7 14/25 15/15 17/18 17/19 23/2 23/5
himself [4]  5/21 17/5 17/10 20/16
hinder [1]  4/20
hindered [1]  17/6
his [17]  3/21 4/9 6/6 11/8 13/1 13/11 17/14 17/24 18/6 18/8 18/12 19/12 19/21 21/15 21/20 22/19 23/3
his testimony [1]  4/9
Honor [17]  3/2 4/16 6/9 8/10 9/5 10/11 10/17 12/5 12/17 13/18 14/11 15/24 18/11 19/19 19/13 23/14 23/15
HONORABLE [1]  1/9
hope [1]  3/12
hotel [2]  8/4 8/6 18/13
how [10]  7/4 7/22 8/2 9/18 10/7 11/16 15/20 15/25 18/18 21/14
huge [1]  7/15
Hughes [3]  1/14 3/5 22/2

**I**

I am [1]  23/5

**I**
I believe [1]  21/22
I can [1]  11/16
I don't [8]  4/12 6/25 8/1
12/11 21/24 22/24 23/2
23/5
I guess [2]  5/1 10/7
I have [1]  11/15
I hope [1]  3/12
I know [2]  10/6 17/21
I mean [8]  4/17 6/22
8/2 8/9 10/7 12/2 15/20
18/21
I think [5]  5/13 9/5
14/17 20/22 20/24
I wanted [3]  3/15 5/15
11/11
I will [1]  19/10
I'd [1]  12/20
I'll [1]  22/1
I'm [19]  4/14 6/6 6/25
7/9 8/22 12/4 12/6 12/7
12/8 14/19 15/17 18/14
18/15 19/8 20/3 20/4
22/18 23/8 23/10
I'm not [3]  6/25 7/9
20/4
I'm sorry [1]  12/6
I've [4]  18/16 23/3 23/3
23/4
idea [1]  15/13
importantly [1]  22/13
inaccuracies [1]  19/14
inaccurate [3]  19/15
19/20 19/23
include [2]  13/21 18/8
included [2]  13/11
14/1
includes [1]  13/6
including [3]  8/24
15/22 17/5
inconsistent [2]  10/13
20/9
indicted [1]  17/22
infer [1]  7/11
inference [2]  8/15 14/8
inferences [4]  3/25 6/3
19/21 21/21
information [1]  5/2
injury [1]  5/6
innocence [7]  4/18
13/1 13/16 14/19 19/25
20/22 22/7
inquiry [1]  5/19
inside [1]  9/10
instructed [1]  15/24
instructions [3]  15/23
21/2 21/3
intend [1]  5/5
intended [1]  22/14
intending [3]  11/22
11/23 11/24
intent [1]  13/4
intention [1]  10/9
interactions [1]  18/12
interrupt [2]  4/20 16/22
interrupted [1]  17/6
involve [1]  18/10

involvement [2]
21/15
is [66]
issue [2]  3/16 22/15
it [35]
it happened [1]  7/22
it's [23]  4/6 4/8 5/8 8/2
8/14 8/15 8/25 11/18
11/19 11/19 11/20
12/12 14/17 15/6 15/6
16/13 16/13 16/14
16/19 16/22 16/24
20/15 22/3
It's agreeing [1]  16/22
It's an [1]  16/14
its [7]  4/13 5/11 5/11
17/24 17/25 21/20 22/5
itself [1]  6/10

**J**
January [1]  3/21
January 6th [1]  3/21
job [1]  6/2
joined [2]  8/16 9/16
9/18 16/2 21/8
joining [1]  16/12
joins [1]  16/17
joke [1]  7/8
JUDGE [2]  1/10 19/23
jury [47]
jury's [6]  3/24 4/8 6/1
7/4 8/23 20/10
just [20]  8/3 8/7 11/12
13/2 13/16 14/3 14/12
15/8 15/18 16/4 16/13
16/19 16/24 17/13 19/1
19/5 21/2 21/5 21/9
22/1

**K**
Kandaris [5]  6/19 11/3
11/16 18/10 19/5
keep [3]  15/16 18/5
18/17
Keepers [3]  9/8 10/4
10/22
Keepers' [1]  21/14
killing [1]  14/23
kind [4]  5/3 14/21 18/5
18/17
knew [1]  10/4
know [27]
knowingly [1]  16/17
knows [1]  13/20

**L**
lack [2]  18/8 23/7
lacking [1]  8/18
last [3]  9/20 12/19 16/4
lasted [1]  15/25
Laureano [1]  22/9
law [4]  4/20 19/16 20/5
20/19
leader [1]  5/21
learned [1]  9/8
left [1]  18/13
lesser [1]  19/11
let [6]  6/15 11/5 11/15

let's [1]  16/7
letter [2]  11/8 23/3
level [1]  13/23
like [9]  5/4 5/10 12/20
13/2 15/12 16/8 18/4
18/17 19/9
line [1]  8/18
little [2]  6/7 18/14
long [2]  15/25 16/4
look [3]  4/13 7/21 16/7
looked [1]  15/23
looking [2]  14/2 16/6
Looks [1]  16/8
lost [2]  10/5 17/14
lots [3]  6/13 7/10 15/1
Louis [2]  1/15 3/5
low [1]  23/6
lower [1]  15/12

**M**
made [4]  3/16 6/17
6/24 7/8
make [2]  12/14 22/22
makes [1]  20/19
making [3]  3/13 7/24
19/15
manager [1]  21/12
Manzo [2]  1/15 3/5
March [1]  24/7
materially [3]  19/15
19/20 19/23
matt [1]  2/5
matter [4]  5/13 15/25
16/1 24/4
Matthew [2]  2/2 3/7
May [2]  1/5 13/18
me [18]  5/23 5/25 6/15
6/16 7/1 7/2 7/25 8/2
8/24 10/12 11/5 11/9
11/15 12/1 12/16 17/17
19/1 20/15
mean [15]  4/17 5/17
6/16 6/20 6/22 7/2 7/21
8/2 8/9 8/12 8/22 10/7
12/2 15/20 18/21
meaning [1]  17/12
means [2]  14/15 17/24
mechanical [1]  2/10
meeting [2]  7/9 16/16
MEHTA [1]  1/9
Merit [1]  2/6
messages [5]  8/4
11/15 14/12 14/17
14/18
mind [3]  10/13 10/15
22/11
minds [1]  16/16
mini [2]  22/14 22/23
minimally [1]  20/25
Minuta [1]  9/22
minutes [1]  7/15
mitigation [2]  5/6 14/4
mob [2]  10/20 10/22
more [5]  11/7 12/24
12/25 15/2 18/14
morning [1]  17/14
most [2]  7/13 12/18

Mr. [78]
Mr. Caldwell [1]  11/3
Mr. Carter [10]  3/17
3/19 4/7 6/21 10/8 11/6
17/23 18/3 21/20 22/19
Mr. Carter's [10]  5/24
6/17 7/3 18/10 19/3
19/17 20/4 22/20 22/23
23/11
Mr. Edwards [2]  12/16
18/23
Mr. Kandaris [5]  6/19
11/3 11/16 18/10 19/5
Mr. Minuta [1]  9/22
Mr. Peed [5]  4/2 4/4
4/12 6/15 12/1 12/11
13/15 18/21 19/17
19/19
Mr. Peed's [3]  12/25
13/2 20/24
Mr. Vallejo [29]
Mr. Vallejo's [5]  3/16
3/20 8/4 13/3 22/25
much [1]  23/16
multiple [1]  21/7
murder [1]  15/4
must [3]  4/22 5/7 17/23
mutual [2]  16/15 21/4
my [7]  4/17 5/18 6/2
13/22 14/23 20/9 22/11

**N**
narrower [1]  12/24
necessary [3]  11/20
11/21 23/5
need [3]  10/17 10/19
23/2
negate [2]  10/14 21/21
never [2]  11/13 19/4
nevertheless [1]  22/4
new [2]  11/10 11/12
next [1]  17/16
night [1]  12/19
no [13]  1/4 3/3 5/10
6/17 10/3 10/4 10/9
11/23 12/1 12/14 18/20
20/7 23/15
not [57]
note [1]  19/10
nothing [1]  17/12
notice [1]  3/14
notwithstanding [1]
17/22
now [4]  7/1 7/13 7/24
17/6
NW [3]  1/16 2/3 2/8

**O**
Oath [4]  9/8 10/4 10/22
21/14
Oath Keepers [3]  9/8
10/4 10/22
Oath Keepers' [1]
21/14
object [2]  16/11 16/18
objects [1]  21/6
observation [1]  3/21

obstructing [1]  12/23
obviously [1]  17/22
odds [1]  6/22
offense [4]  4/23 6/10
10/16 15/22
offenses [1]  15/22
offered [2]  9/11 21/13
offering [1]  18/21
office [1]  1/15 18/16
Official [1]  2/7
okay [4]  16/7 17/9 20/2
23/12
Olive [2]  7/9 9/13
Olive Garden [2]  7/9
9/13
one [2]  12/20 16/2
only [2]  14/24 20/15
open [2]  18/6 18/18
open-ended [1]  18/18
opening [1]  21/16
opportunity [4]  6/24
18/2 18/15 18/17
opposite [1]  8/15
order [1]  21/8
organization [1]  18/9
other [6]  6/21 8/25
11/23 13/9 14/7 15/12
otherwise [2]  8/7 8/21
ought [1]  23/1
our [4]  12/18 12/18
18/16
out [7]  6/19 7/15 11/11
11/17 19/22 20/4 21/6
outfitted [1]  11/13
outset [1]  4/17
outside [1]  18/16
over [1]  7/8
own [1]  18/11

**P**
p.m [5]  1/6 9/16 9/19
9/24 23/17
packaged [1]  13/16
packaging [1]  19/24
papers [1]  5/11
parameters [1]  4/22
part [13]  8/5 10/11
10/25 11/4 13/10 13/25
15/14 17/5 17/10 17/11
17/11 17/15 21/1
particularly [1]  9/19
past [2]  13/21 14/2
Peed [13]  2/2 2/2 3/7
4/2 4/4 4/12 6/15 12/1
12/11 13/15 18/21
19/17 19/19
Peed's [3]  12/25 13/2
20/24
Pelosi [1]  14/3
penalty [1]  12/13
people [10]  6/12 6/19
9/10 9/23 10/10 11/3
11/17 14/1 19/6 21/10
perhaps [1]  6/21
period [3]  11/18 11/19
11/21
permit [2]  20/13 20/13
perplexed [1]  6/7

**P**

person [3]  3/18 3/23 9/21
perspective [1]  18/20
pictures [1]  9/10
piece [1]  19/18
Plaintiff [1]  1/4
point [3]  6/2 13/2 13/22
pointedly [1]  19/2
pointing [3]  19/19 19/20 19/22
police [2]  13/21 14/2
position [2]  12/18 13/13
possession [2]  12/12 12/13
post [1]  4/2
potential [1]  22/16
power [2]  13/10 13/12
prepared [7]  5/21 5/21 7/17 8/5 9/2 9/4 14/8
presence [1]  8/4
present [4]  6/24 19/13 20/7 20/8
presentation [1]  21/17
presented [3]  13/7 19/14 21/23
pretty [1]  4/23
Prettyman [1]  2/8
probative [2]  22/12 23/6
proceeding [2]  10/19 12/23
proceedings [5]  1/9 2/10 3/9 23/17 24/4
process [5]  19/11 19/12 19/13 20/6 20/8
produced [2]  2/11
proffer [4]  3/19 12/25 23/4 23/11
proffered [2]  19/18 21/20
prompted [1]  5/18
proof [1]  14/22
property [3]  14/24 14/25 15/5
proposed [1]  22/17
proposition [2]  16/25 22/4
provided [2]  3/20 4/2
purported [1]  19/3
purpose [2]  8/13 22/24
purposes [3]  6/8 14/4 21/9
pushing [2]  13/21 14/1
put [6]  11/9 12/18 13/15 14/3 15/1 17/21

**Q**

QRF [3]  5/21 14/13 14/14
QRF leader [1]  5/21
question [6]  3/22 4/10 11/6 18/4 19/1 21/25
questions [1]  5/6
quite [3]  6/25 6/25 8/1

raised [1]  3/22
range [3]  15/9 15/10 15/12
read [1]  17/9
real [1]  22/11
really [1]  13/13
Realtime [1]  2/7
reasonable [6]  3/25 6/2 6/5 7/20 12/3 13/8
reasonably [1]  21/22
reasons [1]  23/10
received [1]  10/14
record [5]  4/5 12/20 20/9 21/23 24/3
recorded [1]  2/10
reflect [2]  8/10 8/12
Registered [1]  2/6
rejected [1]  7/19
relate [2]  22/6 22/15
related [1]  13/3
relatively [1]  23/6
relevance [2]  21/24 23/7
relevancy [1]  6/7
relevant [4]  4/23 6/1
relitigate [3]  4/18 5/23 20/21
remotely [1]  3/18
report [1]  9/9
Reporter [4]  2/6 2/6 2/7 2/7
reports [1]  9/7
request [2]  3/16 18/2
require [1]  22/21
required [1]  10/15
requirement [1]  12/14
reserve [2]  18/5 18/17
reserving [1]  18/15
respectfully [1]  9/5
respond [1]  13/18
response [3]  4/13 4/14 5/18
responses [1]  4/2
reverse [2]  14/22 15/6
rides [3]  9/12 10/24 10/25
right [16]  3/10 5/19 9/25 10/10 12/22 16/12 18/5 19/11 19/12 20/3 20/6 20/8 20/14 20/17 23/13 23/16
rightfully [1]  15/24
rights [1]  19/13
rigorous [1]  15/21
rise [1]  8/9
RMR [2]  24/2 24/8
Rotunda [1]  14/2
Rule [2]  20/12 20/17
ruled [2]  4/19 5/9

**S**

said [13]  4/17 5/12 6/20 7/21 10/2 11/8 11/13 14/13 16/8 17/3 17/9 17/23 18/13
same [1]  19/21
say [11]  5/17 6/16 6/16

16/7 19/19 20/13
saying [2]  12/8 17/4
says [3]  7/22 17/12 17/13
second [1]  16/2
see [2]  15/20 18/18
seemed [1]  6/4
seems [3]  5/23 5/25 10/12
sending [1]  11/14
sense [3]  8/14 12/22 16/14
sent [1]  14/18
sentence [3]  4/11 6/6 23/1
sentenced [1]  15/5
sentencing [13]  4/10 5/4 5/14 6/18 15/1 15/8 19/11 20/7 20/15 21/25 22/22 22/25 23/9
sentencings [1]  22/13
sentiment [2]  16/11 17/7
serious [1]  12/3
sets [1]  15/8
short [1]  3/14
should [3]  4/11 6/6 15/11
shouldn't [1]  20/13
shows [1]  4/25
sic [1]  12/22
significant [1]  4/23
similar [1]  22/10
Similarly [1]  22/8
simply [2]  21/5 21/9
sir [1]  3/11
sirens [1]  18/16
sitting [1]  8/7
so [29]
So I think [2]  16/6 20/3
So Mr. Vallejo [1]  9/23
some [9]  3/20 4/2 5/2 8/7 16/16 18/10 18/16 19/22 22/1
somehow [1]  20/24
someone [3]  7/16 7/16 20/14
something [2]  16/23 19/22
soon [1]  11/11
sorry [1]  12/6 18/16 18/23
sort [2]  5/1 15/6
specific [4]  11/18 12/15 13/24 18/14
specifically [1]  21/3
spin [1]  14/16
spirit [1]  10/22
squares [1]  15/20
stands [1]  22/4
starts [1]  9/23
state [2]  10/12 10/15
statements [1]  18/11
STATES [6]  1/1 1/3 1/10 3/3 22/2 22/8
STATUS [1]  1/9
stayed [1]  9/16

stop [5]  10/19 13/10 13/12 15/15 16/21
stopping [1]  15/13
stored [1]  21/13
storm [1]  15/11
Street [2]  1/16 2/3
stuff [3]  14/2 14/3 14/7
subject [2]  22/15
submission [1]  12/19
substantive [4]  9/1 9/3 10/16 15/22
such [3]  3/13 3/23 10/14
Suite [1]  2/3
support [3]  6/5 16/25 21/13
supposed [2]  22/6 23/8
sure [3]  4/16 13/19 19/15
sustain [1]  7/4

**T**

take [2]  9/9 20/4
taken [2]  5/19 16/25
taking [3]  7/8 9/10 19/14
talk [1]  15/16
talked [1]  19/5
talking [2]  6/19 11/17
team [1]  17/10
tell [1]  12/1
terms [1]  22/25
testifies [1]  18/18
testify [6]  3/17 3/23 11/7 17/18 20/14 20/18
testimony [20]  3/20 4/9 5/24 6/17 7/3 11/8 15/2 17/24 18/6 18/22 19/3 19/18 20/4 20/20 21/21 22/6 22/12 22/21 23/3 23/11
text [5]  7/10 7/10 7/21 8/3 17/13
texts [3]  7/21 11/24 13/24
than [3]  11/7 11/24 19/11
Thank [1]  23/16
Thanks [1]  3/13
that [144]
that's [18]  5/1 5/14 5/18 5/23 6/6 8/13 10/24 10/25 11/24 16/5 16/19 16/22 17/1 19/17 21/14 21/17 22/17 22/24
their [1]  15/7
them [10]  5/13 8/6 8/8 8/11 9/4 9/9 10/23 10/24 14/14 21/1
themes [2]  18/5 18/8
then [12]  3/22 7/2 7/3 7/4 7/4 9/11 9/13 15/1 16/11 16/17 17/14 23/2
theory [10]  6/23 11/20 17/20 17/25 18/19

stenography [1]  2/11 20/24 21/11 21/16 21/17
there [12]  4/23 5/10 6/12 7/7 7/9 7/9 8/9 12/14 17/13 17/14 19/18 22/20
there's [12]  6/7 6/13 7/10 7/15 10/3 10/3 11/23 12/1 14/12 14/14 21/24 22/11
these [4]  3/9 7/21 11/3 11/24
they [17]  4/19 7/14 7/14 7/15 8/4 8/12 9/1 10/24 11/2 14/7 14/13 15/13 15/14 19/15 21/6 22/15 22/19
they're [1]  8/13
thing [2]  16/16 19/21
things [4]  5/3 5/4 6/20 6/21
think [13]  5/13 8/18 8/20 9/5 14/17 16/6 20/3 20/22 20/24 21/24 22/24 23/5 23/6
thinking [1]  14/13
this [28]
This is [1]  3/2
those [12]  4/22 5/6 6/20 6/24 8/6 9/20 11/14 13/7 13/21 14/16 14/18 23/10
thought [2]  5/1 12/20
thoughts [1]  4/14
three [1]  10/16
ties [1]  12/25
time [5]  8/22 11/18 11/19 11/22 16/4
titled [1]  24/4
together [1]  3/15
tomorrow [3]  3/18 17/8 18/7
touched [1]  11/13
toward [1]  6/18
transcript [1]  1/9 2/10 24/3
transcription [1]  2/11
transfer [2]  13/10 13/12
trial [9]  4/1 6/4 11/2 14/10 16/7 19/12 20/15 21/24 22/23
trials [1]  22/14
Troy [2]  1/14 3/5
Troy Edwards [1]  3/5
troy.edwards [1]  1/18
truck [1]  17/14
trucks [1]  11/15
true [1]  5/17
try [1]  15/2
trying [3]  4/18 5/23 16/20
two [7]  6/20 11/15 13/24 14/12 19/4 20/12 21/7
type [1]  6/10
types [1]  5/6
typically [1]  5/3 5/7

## U

**U.S [1]**  1/15
**ultimate [4]**  4/9 21/25
23/1 23/1
**unarmed [1]**  7/14
**under [2]**  12/10 20/17
**understand [4]**  7/1 8/2
10/7 12/13
**understanding [3]**
8/22 16/16 21/4
**UNITED [6]**  1/1 1/3
1/10 3/3 22/2 22/8
**United States [1]**  22/2
**United States of [1]**
3/3
**unless [4]**  5/8 8/4 9/1
22/15
**unpublished [1]**  22/3
**until [3]**  9/16 9/22 18/6
**up [1]**  19/24
**upon [4]**  5/22 8/3 14/9
23/11
**upwards [1]**  6/12
**usdoj.gov [1]**  1/18
**use [5]**  5/4 13/6 13/10
13/12 13/12
**used [1]**  14/4
**useful [1]**  14/17
**Usually [1]**  12/10

## V

**VALLEJO [32]**
**Vallejo's [5]**  3/16 3/20
8/4 13/3 22/25
**value [2]**  22/12 23/7
**verdict [4]**  3/24 4/8
8/23 20/10
**versus [5]**  3/4 16/11
16/15 22/2 22/8
**very [8]**  11/1 11/18
11/19 12/3 14/17 16/6
21/3 23/16
**via [3]**  1/9 3/8 4/2
**victims [1]**  20/17
**videoconference [1]**
3/8
**view [10]**  4/6 5/14 5/20
7/4 10/2 14/6 14/7
17/24 20/10 22/19
**vs [1]**  1/5

## W

**walked [1]**  9/21
**want [2]**  5/2 6/16
**wanted [4]**  3/15 5/15
10/24 11/11
**wants [1]**  17/15
**war [1]**  7/10
**was [59]**
**Washington [4]**  1/5
1/16 2/4 2/9
**wasn't [4]**  5/9 6/9
11/14 11/22
**way [1]**  18/12
**we [14]**  7/21 9/10
13/23 13/25 14/3 14/7
15/7 17/4 18/2 18/6
19/7 19/8 19/9 23/13

**we in AM [1]**  19/8
**we will [1]**  17/4
**We would [1]**  18/2
**we'll [3]**  4/2 17/3 17/7
**We're [1]**  7/10
**We've [1]**  12/18
**weapons [9]**  5/22 8/6
8/7 10/9 14/9 14/14
15/11 19/4 21/12
**well [8]**  3/12 5/16 5/17
6/4 7/6 7/18 11/5 19/8
**went [6]**  7/13 7/14 7/14
9/13 15/13 19/4
**were [13]**  6/12 6/16
6/19 6/20 7/2 10/4 11/4
11/16 14/13 15/14
17/18 21/7 21/13
**what [52]**
**what's [1]**  15/6
**whatever [2]**  5/8 17/22
**when [8]**  9/20 9/20
10/19 11/10 11/13
11/14 14/18 17/3
**where [4]**  6/10 7/11
14/22 20/3
**whether [1]**  14/4
**which [12]**  4/2 4/10 5/9
8/2 11/6 12/12 12/25
13/5 20/1 20/4 20/22
22/2
**while [1]**  19/10
**who [4]**  5/12 11/4
17/13 17/13
**who's [1]**  17/10
**why [6]**  5/1 5/15 6/6
6/7 13/16 18/13
**will [6]**  11/6 17/4 18/8
18/10 19/10 20/8
**William [3]**  2/6 24/2
24/8
**willing [1]**  10/23
**willingly [1]**  21/8
**Within [1]**  4/22
**witness [5]**  3/17 13/22
14/13 20/7 20/8
**witness's [1]**  22/6
**witnesses [1]**  15/2
**would [17]**  3/19 5/2
5/13 5/25 6/21 7/2
10/14 13/2 17/18 17/19
18/2 18/4 18/17 21/21
22/6 22/21 22/21
**written [1]**  12/18

## Y

**Yeah [1]**  7/24
**years [1]**  15/5
**yes [4]**  10/11 12/17
13/11 18/1
**you [30]**
**you know [1]**  22/13
**you'd [1]**  19/9
**you're [7]**  5/19 5/23 7/1
7/24 10/8 16/20 16/25
**you've [6]**  4/12 6/20
10/2 10/2 11/9 17/21
**your [25]**
**Your Honor [17]**  3/2

10/17 12/5 12/17 13/18
14/11 15/24 18/1 19/10
19/13 23/14 23/15
**yourselves [1]**  3/13

## Z

**Zaremba [3]**  2/6 24/2
24/8
**ZOOM [1]**  1/9