**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> **v.** <br><br> **EDWARD VALLEJO,** <br> *Defendant.* | **No. 22-cr-15 (APM)** |

<u>**DEFENDANT'S MOTION FOR CONDITIONAL RELEASE PENDING APPEAL**</u>

The defendant, Edward Vallejo, through his attorneys, Stephen R. Sady and Kurt D. Hermansen, respectfully moves this Court for conditional release pending appeal pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1). Mr. Vallejo satisfies the criteria for release because he poses no flight or safety risk, his appeal is not for the purpose of delay, and his appeal raises substantial questions of law that, if decided in his favor, would likely result in a reduced imprisonment sentence that would expire before his appeal concludes or reverse his convictions. The government, through AUSA Kathryn L. Rokoczy, opposes this motion.

Substantial questions exist regarding Mr. Vallejo's sentence and all counts of conviction. First, there is a substantial question as to whether the statute underlying Mr. Vallejo's felony convictions on Counts 2 and 3 for obstruction under 18 U.S.C. § 1512(c)(2) applies to his conduct on January 6, 2021, given the Supreme Court's decision to grant a writ of certiorari in *Fischer v. United States*, 144 S. Ct. 537 (2023). Second, the enhancement Mr. Vallejo suffered under U.S.S.G. § 2J1.2(b)(2) was invalidated in *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024). Third, a substantial question exists regarding whether Congress's counting of the electoral votes qualifies as the "the execution of any law" under the seditious conspiracy statute, 18 U.S.C. § 2384.

1

Finally, there is a substantial question regarding the sufficiency of the evidence that Mr. Vallejo could reasonably foresee that Oath Keepers would enter the U.S. Capitol and interfere with Members of Congress as they discharged their duties. Given the novelty and complexity of the trial issues, these substantial questions should be adjudicated before Mr. Vallejo suffers irreparable harm from completing his sentence before appellate review is possible.

### Background

On January 13, 2022, Mr. Vallejo was arrested based on an indictment charging eleven people with offenses related to conduct at the United States Capitol on January 6, 2021. ECF 6. He remained in custody until released on conditions on May 4, 2022. ECF 122. After numerous superseding indictments, the government ultimately charged him in the first four counts of a superseding indictment with seditious conspiracy, in violation of 18 U.S.C. § 2384; conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k); obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c) and 2; and conspiracy to prevent an officer from discharging any duties, in violation of 18 U.S.C. § 372.

Before trial, the parties litigated questions regarding the scope of criminal liability for each charged count in motions addressing dismissal of charges, the admissibility of evidence, and jury instructions. Mr. Vallejo was tried with co-defendants Roberto Minuta, Joseph Hackett, and David Moerschel between December 6, 2022, and January 23, 2023. The jury ultimately convicted Mr. Vallejo on all four counts.

Before the sentencing hearing, the government and counsel for Mr. Vallejo filed sentencing memoranda calling for very different dispositions. *Compare* ECF 565 *and* 604 with ECF 571. The Court calculated the guidelines range based on zero criminal history for Mr. Vallejo and offense level 29, which included the enhancement for obstruction under U.S.S.G. § 2J1.2(b)(2), reaching

an ultimate guidelines range of 87 to 108 months. ECF 546 (PSR) at 33; ECF 651 (SOR) at 1. Without the three-level obstruction enhancement, the bottom of the range would be 24 months lower at 63 to 78 months; without the eight-level obstruction enhancement, the bottom range would be 60 months lower at 27 to 33 months. At the sentencing hearing on June 1, 2023, after Mr. Vallejo's allocution, the Court granted a downward variance and imposed a term of imprisonment of 36 months, to be followed by a term of supervised release that included 12 months of home confinement. ECF 650.

The Court recommended that the Bureau of Prisons designate Phoenix, Arizona, for service of the sentence near Mr. Vallejo's place of permanent residence. *Id*. The Court also granted voluntary surrender, which Mr. Vallejo fulfilled by reporting to the facility designated by the BOP: FCI Beaumont, Texas, which is about 1,259 miles from his home in Phoenix. He reported to his designated facility on August 9, 2023, so has served a total of 13 months, over 15 months with good time credits. His projected release date is August 8, 2025, which will be accelerated depending on earned time credits under the First Step Act.

On December 13, 2023, the Supreme Court granted certiorari in a January 6th case that presented the following question: "Did the D.C. Circuit err in construing 18 U.S.C. § 1512(c) ('Witness, Victim, or Informant Tampering'), which prohibits obstruction of congressional inquiries and investigations, to include acts unrelated to investigations and evidence?" Pet. for a Writ of Certiorari It i, *Fischer v. United States*, No. 23-5572 (Sept. 11, 2023), *cert. granted*, 144 S. Ct. 5378 (2023). On March 1, 2024, the court of appeals vacated the sentence in a different January 6th case based on the conclusion that the three-level enhancement under U.S.S.G.

§ 2J1.2(b)(2), which was also applied in the present case, only applies to judicial, not legislative, proceedings. *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024).

The Oregon Federal Public Defender's office filed an entry of appearance as appellate counsel for Mr. Vallejo on February 21, 2024. There has not been a previous motion for release pending appeal.

### Grounds for Release Pending Appeal

This case involves all the factors favoring release pending appeal. Under 18 U.S.C. §§ 3143(b)(1) and 3142(c), this Court "shall order the release" of the defendant pending appeal based on findings that:

    (A)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

    (B)    that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –

        (i)    reversal,

        (ii)    an order for a new trial,

        (iii)    a sentence that does not include a term of imprisonment, or

        (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The defendant bears the burden of showing that both statutory prongs of subsection (A) and (B) are met. *See United States v. Perholtz*, 836 F.2d 554, 555–56 (D.C. Cir. 1987).

After determining that a defendant is neither a flight risk nor a danger to the community, courts use a two step-inquiry to determine whether to release that defendant pending appeal under § 3143(b)(1): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of

that question in the defendant's favor be likely to lead to [one of the options enumerated in § 3143(b)(1)(B)(i)–(iv)]?" *Perholtz*, 836 F.2d at 555. "[A] substantial question is a close question or one that very well could be decided the other way." *Id*. (internal quotation marks omitted). Given the Supreme Court's decision to hear *Fischer*, the court of appeals decision in *Brock*, and other potential issues, Mr. Vallejo meets all of the statutory criteria for release pending appeal.

**A.     Mr. Vallejo poses no flight or safety risk.**

Mr. Vallejo's behavior since the inception of this case has demonstrated by clear and convincing evidence that he will not flee and is not a safety risk. Mr. Vallejo fully complied with his conditions of pretrial release and voluntarily surrendered to his designated Bureau of Prisons facility, which, despite this Court's recommendation, is in Beaumont, Texas, rather than his permanent residence in Phoenix, Arizona. Thus, he has established that he poses no risk of flight, having complied with all this Court's pretrial requirements, and he poses no risk to the community as established by this Court's approval of release based on risk assessment under 18 U.S.C. § 3142(g). He has already served much of his sentence, so the risk of flight is even lower than when he voluntarily surrendered.

**B.     Mr. Vallejo's appeal raises substantial questions and is not for the purpose of delay.**

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *Perholtz*, 836 F.2d at 555 (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)). This standard does not require the Court to find that Mr. Vallejo's appeal establishes a likelihood of reversal. *See Bayko*, 774 F.2d at 522–23. Rather, the Court must "evaluate the difficulty of the question" on appeal, and grant release pending appeal if it determines that the question is a close one or one that "'very well could be decided'" in the

defendant's favor. *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).

1.      **The grant of a writ of certiorari in *Fischer* raises substantial questions regarding the validity of Counts 2 and 3.**

The Supreme Court's grant of certiorari in *Fischer* establishes that the question whether 18 U.S.C. §§ 1512(c)(2) and (k) apply to Mr. Vallejo's conduct is substantial. This Court ruled on the same issue addressed in *Fischer* in denying Mr. Vallejo's motion to dismiss counts 2 and 3. ECF 176 at 26–27. Before the grant of certiorari, the D.C. Circuit adopted a "broad interpretation" of § 1512(c)(2) that "encompass[es] all forms of obstructive acts[,]" not just those related to a "record, document, or other object" as mentioned in § 1512(c)(1). *United States v. Fischer*, 64 F.4th 329, 337 (D.C. Cir. 2023), *cert. granted*, 144 S. Ct. 537 (2023). But Judge Katsas dissented, setting out layers of analysis that would foreclose applying the statute's subsections to the present case:

> In my view, the government's interpretation is mistaken. For one thing, it dubiously reads otherwise to mean "in a manner different from," rather than "in a manner similar to." For another, it reads the catch-all provision in subsection (c)(2) to render ineffective the longer, more grammatically complex list of examples in subsection (c)(1), which is inconsistent with normal linguistic usage and with several canons reflecting it. The government's reading is also hard to reconcile with the structure and history of section 1512, and with decades of precedent applying section 1512(c) only to acts that affect the integrity or availability of evidence. Moreover, the government's reading makes section 1512(c) implausibly broad and unconstitutional in a significant number of its applications. Finally, if all of that were not enough, these various considerations make the question presented at least close enough to trigger the rule of lenity.

*Fischer*, 64 F.4th at 363 (Katsas, J., dissenting); *see also Dubin v. United States*, 599 U.S. 110, 120-27 (2023) (rejecting government's broad reading of criminal statute). Adding to the substantial issues regarding the prosecution, the concurring opinion disagreed with the meaning of "corruptly" in this context, requiring proof that the "defendant must not only kn[ow] he was obtaining an

'unlawful benefit,' it must also be his 'objective' or 'purpose.'" *Fischer*, 64 F.4th at 352 (Walker, J., concurring in part) (citing *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)) (internal quotation marks omitted).

Mr. Vallejo challenged the application of the felony obstruction count, 18 U.S.C. § 1512(c)(2), as well as the conspiracy to obstruct count, 18 U.S.C. § 1512(k), on grounds that encompass the claim in *Fischer* that the allegations against him cannot qualify as conduct that "otherwise obstructs, influences, or impedes" an official proceeding because § 1512(c)(2) is limited by § 1512(c)(1). Read as such, subsection (c)(2) prohibits only conduct "with respect to a document, record, or other object," which, like the Supreme Court's decision in *Yates v. United States*, 574 U.S. 528 (2015), where the prosecution exceeded the scope of the Sarbanes-Oxley Act, would require reversal of the convictions.

As to that issue, substantiality for the purposes of release pending appeal is no longer hypothetical or debatable: the Supreme Court has granted certiorari to assess whether the D.C. Circuit erred in adopting a broad reading of 18 U.S.C. § 1512(c) "to include acts unrelated to investigations and evidence." *See* Pet. for a Writ of Certiorari at i, *Fischer v. United States*, No. 23-5572 (Sept. 11, 2023), *cert. granted*, 144 S. Ct. 537 (2023). The Supreme Court granting certiorari provides a strong indication of substantiality. *See, e.g.*, Sup. Ct. R. 10 ("The following . . . indicate the character of the reasons the Court considers [when reviewing a writ of certiorari]: . . . a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court.").

2.      **The Court of Appeals will consider a substantial issue regarding the three-level enhancement for obstruction under U.S.S.G. § 2J1.2(b)(2).**

This Court imposed sentence in the present case based on an offense level that was increased by three under U.S.S.G. § 2J1.2(b)(2) for interference with the administration of justice. ECF 546 (PSR) at 33. In *Brock*, the court of appeals rejected the applicability of this specific offense characteristic because the plain language of the guideline implicated judicial proceedings:

> With great respect to our district court colleagues' thoughtfully reasoned efforts to apply this Guideline, we hold that, for purposes of Sentencing Guideline 2J1.2, the phrase "administration of justice" does not encompass Congress's role in the electoral certification process. Instead, Section 2J1.2's text, context, and commentary show that "administration of justice" refers to judicial, quasi-judicial, and adjunct investigative proceedings, but does not extend to the unique congressional function of certifying electoral college votes.

*Brock*, 94 F.4th at 51. *Brock*'s holding controls this case.

The guidelines error will require vacating the sentences and resentencing. Although the Court granted a downward variance, the overly harsh guidelines range provided the starting point, or anchor, or framework for the ultimate sentence:

- *Molina-Martinez v. United States*, 578 U.S. 189, 192 (2016) ("The Sentencing Guidelines provide the framework for the tens of thousands of federal sentencing proceedings that occur each year.").

- *Peugh v. United States*, 569 U.S. 530, 549 (2013) ("[T]hose Guidelines will anchor both the district court's discretion and the appellate review process in all of the ways we have described.").

- *Gall v. United States*, 552 U.S. 38, 44, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").

The Supreme Court has recognized that guidelines errors are so significant that plain error review applies regardless of whether the ultimate sentence is below the guideline range. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) ("Courts are not bound by the Guidelines, but even

8

in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'") (quoting *Gall*, 569 U.S. at 541); *see Peugh*, 569 U.S. at 542 ("Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.'" (emphasis in *Peugh*) (citation omitted); *Molina-Martinez*, 578 U.S. at 199 ("'[W]hen a Guidelines range moves up or down, offenders' sentences [tend to] move with it.'") (quoting *Peugh*, 569 U.S. at 544).

The guidelines calculation involves substantial questions that establish bases for release pending appeal. In fact, success on appeal on the sentencing issue is nearly certain given *Brock*'s precedential effect.

> **3.     There is a substantial question regarding the applicability of the seditious conspiracy statute to Congress's role in the certification proceeding.**

Before trial, Mr. Vallejo joined all the defendants in objecting to the application of the statutory phrase "execution of any law" to Congress's role in gathering to count and certify votes by the Electoral College. ECF 84 at 5-19; ECF 94. In addition, Mr. Vallejo individually argued that "any other conclusion would place § 2384 in fatal tension with 18 U.S.C. § 1512(c) and (k), the statutes underlying Counts Two and Three," because "the government has urged that the certification of electoral results by Congress is an 'official proceeding' before Congress of the kind and solemnity reflected in the other judicial proceedings listed in 18 U.S.C. § 1515." *Id*. at 2.

These arguments were rooted in persuasive language from two important Supreme Court opinions. First, language in *Bowsher v. Synar*, 478 U.S. 714 (1986), supports the view that members of Congress are constitutionally prohibited from executing the law:

> To permit the execution of the laws to be vested in an officer answerable only to Congress would, in practical terms, reserve in Congress control over the execution of the laws. . . . *The structure of the Constitution does not permit Congress to execute the laws*; it follows that Congress cannot grant to an officer under its control what it does not possess.

*Id*. at 726–27 (emphasis added). Second, even if Congress can be deemed to "execute" laws for purposes of § 2384, language in *Buckley v. Valeo*, 424 U.S. 1 (1976), supports the conclusion that Congress's role in the certification proceeding is "judicial in character," not an executive function:

> Appellees also rely on the Twelfth Amendment to the Constitution insofar as the authority of the Commission to regulate practices in connection with the Presidential election is concerned….Congress viewed this Amendment as conferring upon its two Houses the same sort of power judicial in character…as was conferred upon each House by Art. I, § 5, with respect to elections of its own members.

*Id*. at 133–34 (quotation marks omitted).

This Court's analysis, which spanned 20 pages, ultimately determined that "the government has the better reading of the seditious conspiracy statute." ECF 176 at 9. Even if the Court's view is ultimately adopted by the Court of Appeals, however, this novel question of statutory interpretation presents, at a minimum, "a close question…that very well could be decided the other way." *Id*. (internal quotation marks omitted). *Perholtz*, 836 F.2d at 555. No other court has ever had to address this unusual question, and it is certainly a thornier issue than many judges have previously considered regarding the "administration of justice" enhancement in *Brock* or the meaning of § 1512(c) in *Fischer*.

**4.    Mr. Vallejo's unique factual circumstances raise a substantial question regarding the sufficiency of the evidence that he joined a conspiracy to interfere with the certification proceeding.**

Following trial, Mr. Vallejo submitted a 33-page motion for acquittal pursuant to Rule 29. ECF 477-1. As argued in that motion, there was substantial testimony and documentary evidence

at trial that the Oath Keepers did not have any plan to enter the U.S. Capitol or disrupt the certification proceeding on or before January 6 at around 2:32 p.m. *Id*. at 7–11. As recounted by witnesses at both trials, the leaders of the Oath Keepers were taken aback by the day's events and gathered in front of the Capitol to decide how to respond. *Id*. Decisions were then made in real time at the Capitol by various Oath Keeper members regarding whether to go in or not. At Mr. Vallejo's trial, government witness Brian Ulrich described vividly how he had an internal "battl[e]" within himself on the steps of the Capitol for a full "four or five minutes" before deciding to go in, because he "knew going in there was wrong" but felt he had to "do something." *Id*. at 7 (citing trial transcript). And while Ulrich was deciding whether to "go in," another Oath Keeper right next to him "made it clear he wasn't going inside." *Id*. (citing trial transcript).

Importantly, while all other defendants charged in this case were at the Capitol witnessing the events and deciding whether to "go in," Mr. Vallejo was not. His only source of information regarding the Oath Keepers' activities was the group chat he had been added to the day before. Mr. Vallejo thus had no way of learning that individual Oath Keepers made decisions between 2:32 p.m. and 3:30 p.m. to interrupt the certification process, nor was there any evidence at trial that he learned this. Moreover, Mr. Vallejo's pre-certification podcasts spoke of waiting to see what the outcome of the process would be, and his comments during the incursion into the Capitol reflected confusion over who was responsible and criticism of those who broke into the building, which he called "domestic terrorism." Tr. 4157.

This trial record failed to establish that Mr. Vallejo ever joined in a specific conspiracy hatched on the Capitol steps to interfere with Members of Congress as they performed their duties during the certification. Indeed, the government did not really argue otherwise. Rather, it argued

11

that Mr. Vallejo joined a more general conspiracy to "use *any means necessary* including using force to stop the transfer of power from President Donald Trump to President-Elect Joe Biden." Tr. 888 (emphasis added). The Court likewise did not rely on evidence of a specific conspiracy to interrupt Congress in denying Mr. Vallejo's motion. Rather, the Court held that the evidence, viewed in the light most favorable to the government, was sufficient to establish that Mr. Vallejo joined in a general conspiracy to stop the transfer of power to President-Elect Biden, including by force if necessary. From this, the Court reasoned that it was *reasonably foreseeable* to Mr. Vallejo that his co-conspirators would enter the Capitol and interfere with Members of Congress in furtherance of their overall conspiratorial goals when presented with the opportunity to do so.

While Mr. Vallejo respects the Court's decision, a reviewing court might take a different view of what was reasonably foreseeable to Mr. Vallejo regarding how his co-conspirators would react to the unanticipated and unprecedented events of January 6th. As Mr. Ulrich testified, several Oath Keepers right on the scene chose *not* to go in and interrupt the proceeding, and he wrestled extensively with whether to do so himself. Since there is no evidence in the record to distinguish these dissenting Oath Keepers from Mr. Ulrich or any others in terms of their overall goals or support for Mr. Trump, this is strong evidence that it was not foreseeable that Oath Keepers would illegally enter the Capitol building without any prior plan.

Moreover, the incursion into the Capitol angered many on the right of the political spectrum and led to a more unified rejection of objections to the Electoral College results throughout the rest of the proceeding. Mr. Vallejo's companion, Todd Kandaris, bemoaned this very fact the day after the incursion. ECF 102-1 at 23. Thus, even assuming Mr. Vallejo supported the overall goal of preventing the transfer of power "by any means necessary including using force," Tr. 888, a

reviewing court could easily determine that the methods chosen by certain Oath Keeper members that afternoon—going into the building defended by valiant police officers in the midst of an unprecedented security breakdown—were "rogue" and not a reasonably foreseeable response.

Indeed, in a similar case involving violent anti-government rhetoric, another district court carefully parsed the evidence and found it to be insufficient evidence of conspiracy for persons on the periphery like Mr. Vallejo. *See United States v. Stone*, No. 10-20123, 2012 WL 1034937 (E.D. Mich. Mar. 27, 2012). While there are differences between this case and *Stone*, the overall thrust of the opinion, at a minimum, supports the conclusion that different courts may view what is "reasonably foreseeable" differently under these circumstances.

It is also significant that much of the government's evidence regarding Mr. Vallejo consisted of political speech reflecting excitement that "the people" were protesting the election certification en masse. When an alleged conspiracy implicates First Amendment protections such as freedom of speech and freedom of association, the court must make a "specially meticulous inquiry" into the government's evidence so there is not "an unfair imputation of the intent or acts of some participants to all others." *United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972). Indeed, the Supreme Court recognizes a wide variety of hyperbolic and passionate speech as protected. *See NAACP v. Clairborne Hardware*, 458 U.S. 886, 902 (1982) (holding "If we catch any of you going in any of them racist stores, we're gonna break your damn neck" constituted protected "emotionally charged rhetoric"); *Watts v. United States*, 394 U.S. 705 (1969) (holding "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." constituted "political hyperbole" and was not a true threat against the president). The "mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it," so the government can

suppress speech for advocating the use of force or a violation of law only if "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 236 (2002) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).

Applying these principles of careful inquiry, the Court in *Stone* concluded that the evidence was insufficient despite highly analogous war-like statements against the federal government. *Stone*, 2012 WL 1034937 at *10 ("It stands to reason that most, if not all, of these Defendants had a strong dislike—perhaps hatred—of the Federal Government and law enforcement at every level….The evidence certainly suggests that Stone strongly believed in the idea of a need to go to war with certain enemies….But, the Court would need to engage in conjecture and surmise to find sufficient evidence that Defendants 'shared a 'unity of purpose', the intent to achieve a common goal, and an agreement to work together toward the goal.'"). While this Court reached the contrary conclusion in this case, it is reasonably possible that a reviewing court would disagree and find that the evidence was insufficient to establish beyond a reasonable doubt that Mr. Vallejo could reasonably foresee that Oath Keepers would enter the Capitol and interfere with Congress in response to the events of January 6th.[1] There is thus a substantial question that implicates all of

---

[1] More simply, a reviewing court could hold that the government's formulation of an agreement to stop the transfer of power "by any means necessary, up to and including the use of force," Tr. 4426, is too vague to qualify as a well-pled conspiratorial agreement. In a conspiracy case, it is "essential to determine what kind of agreement or understanding existed as to each defendant." *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Cir. 1985). This requires the government to show that the co-conspirators "agreed to the same *type* of conduct." *Id*. at 337 (emphasis in original). Here, this means the government was required to prove beyond a reasonable doubt that each conspirator agreed to specifically hinder or delay *Members of Congress* in the discharge of their duties. At the very least, there is a substantial question whether this level of specificity of agreement was required to be pleaded and proven.

Mr. Vallejo's convictions, including for conspiring to interfere with Members of Congress in the performance of their duties.

**C.      Resolution of the substantial questions in Mr. Vallejo's favor would result in vacating his convictions or a reduced imprisonment sentence that would likely expire before the appeal concludes.**

If decided in Mr. Vallejo's favor, the *Brock* issue at sentencing alone warrants release pending appeal. Under the statute, the *Brock* issue is "likely to result in" "a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of the appellate process." 18 U.S.C. § 3154(b)(1)(B)(iv). The current median time interval from the filing of a notice of appeal to disposition in the D.C. Circuit is 11.3 months.[2] This particular appeal has already eclipsed that period, and briefing has not even begun. Moreover, realistically, briefing must wait until the resolution of *Fischer*, since the application of § 1512(c) is a central question to this case.

Given this already lengthy duration of the appellate process, any sentence reduction would qualify Mr. Vallejo for release pending appeal, since a reduced sentence would likely have an immediate impact in either release or eligibility for community corrections. The three-level enhancement rejected in *Brock* alone would have changed the Court's starting point from 87 to 63 months: a full two-year difference. And the 8-level decrease that *Brock* also mandates for U.S.S.G. § 2J1.2(b)(1)(B) would bring Mr. Vallejo's starting point to 27 months, a *five-year* difference. With a comparably lower sentence based on the lower number of levels involved, Mr. Vallejo would likely be in community corrections by now. *See* U.S.S.G. § 1B1.10(b)(2)(B) (when a

---

[2] U.S. Courts of Appeals — Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2021 (Table B-4), available at https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2021.pdf.

defendant is eligible for an ameliorating retroactive guidelines amendment after substantial assistance departure, "a reduction comparably less than the amended guideline range" may be appropriate).[3]

Aside from sentencing, all of the counts against Mr. Vallejo face substantial questions that could result in their reversal. The *Fischer* issues could result in the dismissal of Mr. Vallejo's § 1512(c) counts or a new trial with modified jury instructions; the seditious conspiracy statute's "execution" language could be construed as only applicable to the executive branch; and a reviewing court could take a different view of how reasonably foreseeable it was to Mr. Vallejo that a subset of Oath Keepers gathering in front of the U.S. Capitol would decide to go in. These substantial questions strongly support release. *See* 18 U.S.C. § 3154(b)(1)(B)(i) and (ii) (release appropriate for questions likely to result in reversal or new trial).

Moreover, Mr. Vallejo's limited involvement makes this the kind of close case where any additional trial error is likely to result in reversal and remand for a new trial. The government would not be able to establish harmless error under either the constitutional standard of *Chapman v. California*, 386 U.S. 18, 21–22 (1967), or the standard for non-constitutional error under *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

In sum, Mr. Vallejo's sentence—when recalculated without the administration of justice enhancements—will likely be less than the expected duration of the appeal process plus the total time he has already served. And if *Fischer* is decided favorably to the defense before the end of

---

[3] With comparably fewer offense levels, and applying the Court's prior analysis, the sentence in the present case would be 26 months and, with good time credits but without earned time credits, about 22 months of actual custody. With community corrections, he would be back in the community in about 19 months, again not counting earned time credits. And this does not even account for the 8-level decrease that *Brock* also mandates for U.S.S.G. § 2J1.2(b)(1)(B).

the Supreme Court's term, Mr. Vallejo's appeal would result in remand to vacate counts and consider the effects of the Supreme Court's new guidance. Lastly, the trial of this case involves substantial, novel, and complex issues regarding the seditious conspiracy statute and the sufficiency of the evidence that will take a substantial period of time to resolve and could result in the vacating of all of Mr. Vallejo's convictions.

### Conclusion

For these reasons, Mr. Vallejo respectfully moves for an order releasing him pending appeal on the conditions imposed for his pretrial release in Phoenix, Arizona.

Respectfully Submitted,

 s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Defender for the
District of Oregon
101 SW Main Street, Suite 1700
Portland, OR 97204
(503) 326-2123

Kurt D. Hermansen
Supervisory Assistant Federal Defender
859 Willamette Street, Suite 200
Eugene, OR 97401
(541) 465-6937