**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **v.** | ) | **Criminal No. 22-cr-15-11 (APM)** |
| **EDWARD VALLEJO,** | ) | |
| **Defendants** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

On June 1, 2023, the court sentenced Defendant Edward Vallejo to a 36-month term of imprisonment to be followed by a year of home confinement, following his conviction on four counts arising from the events of January 6, 2021. Defendant was convicted of: (1) seditious conspiracy, in violation of 18 U.S.C. § 2384; (2) conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k); (3) obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; and (4) conspiracy to prevent an officer from discharging any duties, in violation of 18 U.S.C. § 372. Defendant began serving his sentence on August 9, 2023. He now seeks release pending appeal pursuant 18 U.S.C. § 3143(b). Def.'s Mot. for Conditional Release Pending Appeal, ECF No. 863 [hereinafter Def.'s Mot.].

The court denies Defendant's motion for two reasons: (1) he has not raised a "substantial question of law," 18 U.S.C. § 3143(b)(1)(B), and (2) he has not shown that favorable appellate review is "likely to result in" "a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appellate process." *Id.* § 3143(b)(1)(B)(iv).

**II.**

A convicted defendant "cannot be released unless the appeal raises a substantial question likely to result in reversal of all counts on which imprisonment is imposed." *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1987). The showing that "all counts" likely will be reversed is particularly important in this case because all of Defendant's counts of conviction were governed by the same guideline provision (U.S.S.G. § 2J1.2), meaning that Defendant will be subject to the same guideline calculation even if a single conviction remains. Defendant evidently has raised a "substantial question" as to the two obstruction counts after the Supreme Court's decision in *Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176 (2024). So, the question is whether he has done the same for his two other convictions—seditious conspiracy and conspiracy to prevent an officer from discharging any duties. He has not.

*Seditious Conspiracy.* Defendant identifies the following as the "substantial question" that is likely to result in reversal of his seditious conspiracy conviction: whether members of Congress on January 6 engaged in the "execution of any law of the United States" for purposes of § 2384. Def.'s Mot. at 9. He maintains that they did not because under the Constitution members of Congress do not "execute" the laws, only the Executive Branch does. *Id.* at 9–10.

An appeal of that issue is not likely to lead to reversal. Defendant fails to contest two key additional rulings that the court made, each of which render his argument insubstantial. First, in denying Defendants' motion to dismiss, the court held that the government needed to prove only that the seditious conspiracy was "directed against the government of the United States as a whole in its execution of the laws," not that any particular federal actor was the object of the conspiracy. *United States v. Rhodes*, 610 F. Supp. 3d 29, 37–40 (D.D.C. 2022). The jury was instructed consistent with that understanding. Jury Instructions, ECF No. 457, at 23–24 (Instructing the jury

to "determine whether the agreement was to forcibly resist the authority of the United States while it endeavored to carry the laws into execution. Or, put differently, you should determine whether the agreement was to exert force against the government of the United States in its execution of the laws of the United States."). So, contrary what Defendant will argue on appeal, it was not an element of proof that a member of Congress executed any law on January 6.

Second, the court also ruled in the same opinion that the Vice President was "executing" the laws of the United States on January 6, specifically the Twelfth Amendment to the Constitution and the Electoral Count Act. *Rhodes*, 610 F. Supp. 3d at 40–41. Therefore, even if, as Defendant claims, seditious conspiracy requires an identifiable federal actor who executes the laws, he does not dispute that the Vice President fits the bill.

Turning then to Defendant's argument, he has not shown it to be "a 'close' question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555 (citation omitted). The court previously rejected the contention that members of Congress were not "executing" the laws on January 6 for purposes of § 2384. The court explained that § 2384 does not employ the term "execution" in its constitutional sense but in its ordinary one and, under that definition ("carrying into effect"), members of Congress were "executing" the laws relating to the peaceful transfer of power on January 6. *Rhodes*, 610 F. Supp. 3d at 41–42 (citing *Lamar v. United States*, 240 U.S. 60, 64 (1916) and *Lamar v. United States*, 241 U.S. 103, 111 (1916)). Defendant nowhere addresses this reasoning.

Instead, Defendant relies only on cases in which the Supreme Court has interpreted the term "execute" in the constitutional sense. Def.'s Mot. at 9–10 (citing *Bowsher v. Synar*, 478 U.S. 714 (1986) and *Buckley v. Valeo*, 424 U.S. 1 (1976)); *see Rhodes*, 610 F. Supp. 3d at 43–44 (distinguishing *Buckley*). Those cases are inapposite because, as this court explained, "the

Supreme Court has not reflexively imported constitutional meanings into federal statutes." *Rhodes*, 610 F. Supp. 3d at 41–42 (quoting *Thompson v. Trump*, 590 F. Supp. 3d 46, 92 (D.D.C. 2022)).

Defendant also points out that "[n]o other court has had to address this unusual question[.]" Def.'s Mot. at 10. The mere novelty of an issue, however, cannot give rise to a "substantial question." *United States v. Navarro*, No. 22-cr-200 (APM), 2024 WL 2161418, at *1 (D.D.C. Feb. 8, 2024).

*Conspiracy to Prevent an Officer from Discharging Any Duties*. Defendant next argues that there is a "substantial" question as to the sufficiency of the evidence to support his conviction for conspiracy to prevent an officer from discharging any duties. Def.'s Mot. at 10–14. He claims that, when the court sustained this conviction post-trial, it reasoned that the evidence showed that "it was *reasonably foreseeable* to Mr. Vallejo that his co-conspirators would enter the Capitol and interfere with Members of Congress in furtherance of their overall conspiratorial goals when presented with the opportunity to do so," and that the evidence could be viewed differently on appeal. *Id.* at 12 (emphasis added).

Defendant misconstrues the court's decision. The court did not rule that the evidence was sufficient because it was "reasonably foreseeable" that his co-conspirators would enter the Capitol to interfere with the Electoral College vote. Instead, the court held that a reasonable jury could have concluded that Defendant in fact *knew* his co-conspirators would do so. *See* Hr'g Tr., ECF No. 815, at 73–75 (rejecting Defendant's argument that the jury could not have inferred that he knew other Oath Keepers had entered the Capitol), 103–106 (rejecting Defendant's argument that no reasonable juror could find that he was part of an "uncommunicated plan" and outlining evidence).

To be sure, the court did use the words "reasonably foreseeable" when it rejected Defendant's argument that the record lacked sufficient proof of knowledge. *Id.* at 74:21-22. But the use of that term was inadvertent during the course of a long oral ruling. What the court said immediately after makes clear it was not resting its sufficiency determination on a finding of "reasonable foreseeability":

> [A]nd, importantly, a reasonable inference the jury could have drawn from all of the communications and Mr. Vallejo's understanding, including [what] he read on the open letter that Mr. Rhodes had posted[,] that Oath Keepers, given the opportunity that day, almost certainly would have gone inside the Capitol to resist the congressional proceeding.

*Id.* at 74:22–75:3. Thus, the court found that the jury could have reasonably inferred that Defendant would have known that his fellow Oath Keepers had entered the Capitol on January 6 to interfere with Congress's duties. The jury also could have reasonably found that Defendant knowingly and voluntarily joined in that conspiracy, at the latest, when he offered to bring the armed QRF into the District while the riot at the Capitol was ongoing ("QRF standing by at hotel. Just say the word . . ."). *See id*. at 105:13.

**III.**

Defendant also has not shown that a favorable result on appeal is "likely to result in" "a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appellate process." 18 U.S.C. § 3143(b)(1)(B)(iv). Defendant, of course, is right that the D.C. Circuit's decision in *United States v. Brock* gives rise to a "substantial question" and means that his total offense level was improperly increased by 11 levels. 94 F.4th 39, 51–54 (D.C. Cir. 2024) (holding that the "administration of justice" sentencing enhancements under § 2J1.2 apply only to proceedings that are judicial or quasi-judicial). Defendant's revised guideline calculation based solely on subtracting those 11 levels would result in a guideline range

of 27 to 33 months. Defendant argues that the time he has served (13 months) plus the time it will take the D.C. Circuit to resolve what will be a complex appeal (briefing has not yet even started) will exceed the time the court likely would impose on a post-*Brock* remand. Def.'s Mot. at 15–17.

Defendant is undoubtedly correct that the appellate process will be long, but he has not convinced the court that his sentence is likely to be substantially shortened, if at all. One of the lessons this court has taken from *Brock* is that § 2J1.2 does not adequately account for the seriousness of convictions for seditious conspiracy and conspiracy to prevent the discharge of duties. The former does not even appear in the Guidelines Manual's statutory index, and the latter defaults to the "Not Covered by a Specific Offense" conspiracy guideline under § 2X1.1. Section 2J1.2 also does not account for an unprecedented day like January 6. At a resentencing, the court will take a hard look at whether certain upward departures might apply or whether an upward departure (or variance) is warranted because Defendant's conduct lies outside the heartland of offenses covered by § 2J1.2. The post-*Brock* guideline range therefore may not be the one the court applies at resentencing, and Defendant's 36-month sentence is likely to fall within any higher guideline range.

Additionally, when it weighed the § 3553(a) factors for all Oath Keepers defendants, the court carefully calibrated individual sentences based on that particular defendant's role in the offense and the seriousness of their conduct. Organizers, planners, and those who used force received stiffer sentences. Those who were largely followers and did not use force received lesser sentences. The court deemed Defendant's conduct to fall somewhere in the middle: he was neither a leader nor organizer but more culpable than others because he served as the QRF and was prepared to bring weapons to the Capitol if Stuart Rhodes had ordered him to do so. Given the seriousness of Defendant's conduct and his critical role, a sentence reduction is far from assured.

**IV.**

For the foregoing reasons, Defendant's Motion for Conditional Release Pending Appeal, ECF No. 863, is denied.

Amit P. Mehta
United States District Court Judge

Date: July 25, 2024